NANCY ELIZABETH BROWNING, Plaintiff v. ERIC LANDERS HELFF, Defendant

No. COA98-1298

(Filed 18 January 2000)

**Child Support, Custody, and Visitation— visitation—modification—cohabitation**

A child visitation order was remanded for further findings where the court modified defendant's visitation privileges upon findings that he was residing with a person of the opposite gender to whom he was not married, but did not make findings as to the effect upon the welfare of the children.

Appeal by defendant from judgment entered 7 July 1998 by Judge Anne B. Salisbury in Wake County District Court. Heard in the Court of Appeals 4 October 1999.

*Edward P. Hausle, P.A., for plaintiff appellee.*

*Brady, Schilawski & Ingram, P.L.L.C., by Michael F. Schilawski for defendant appellant.*

TIMMONS-GOODSON, Judge.

Eric Landers Helff ("defendant") and Nancy Elizabeth Browning ("plaintiff") were married and had two children, ages five and seven,

at the time of the hearing in issue. The parties separated in January of 1996 and divorced in May of 1997. Defendant appeals from an order by the trial court modifying his child visitation privileges. Specifically, the trial court ordered that "Defendant shall not have any person of the opposite gender, not related by blood or marriage, staying with him after midnight when the minor children are in his physical custody and control, whether at his residence or at any other location."

On 12 March 1997, the parties tendered a Memorandum of Order ("Memorandum") to the Wake County District Court which outlined the terms of their separation. The Memorandum was entered as the final order on 15 January 1998, *nunc pro tunc* to 12 March 1997. In pertinent part, the Memorandum stated that "Plaintiff and Defendant shall share the joint legal care, custody and control of the minor children" and that "the Plaintiff shall have the primary physical custody of said minor children, subject to the Defendant's rights of reasonable visitation." On the face of the Memorandum, the parties crossed out a provision which stated, "The parties agree not to cohabitate with members of the opposite sex to whom they are not related while the children are in their home."

Subsequently, plaintiff filed a Motion in the Cause seeking modification of defendant's visitation privileges. Plaintiff alleged a substantial change of circumstances had occurred since the entry of the Memorandum. Specifically, plaintiff contended she had discovered that defendant "resides with a person of the opposite gender to whom he is not related by blood or marriage[,]" and that "[t]he minor children should not be exposed to the Defendant's cohabitation with a person of the opposite sex during periods of visitation."

Plaintiff's Motion in the Cause was heard on 20 April 1998. Plaintiff's evidence at the hearing tended to show the following. The parties' minor children told plaintiff that Karen Barone lived at defendant's home and slept with defendant. Plaintiff took the minor children to a minister who talked to the children about "morals, God's rules about how people should live their life [sic], and that . . . we are supposed to live by certain rules and honor the sanctity of marriage, honor God." According to plaintiff's testimony, her son stated that "when he gets scared at night, he can't go into daddy's room because he's afraid to wake [Karen Barone] up . . . that he thinks daddy is doing something wrong. And he doesn't know who's who in the bed." Plaintiff also testified that the five year-old child "understood the concept of people living together who aren't married."

Defendant's evidence at the hearing tended to show the following. Karen Barone began living in defendant's home in September of 1997 and resides there on a full-time basis. The children are aware that defendant and Karen Barone share a bedroom and the children may have seen them in bed together once or twice. Karen Barone is a good friend to the children and is involved in every part of their lives. Plaintiff admitted that it was possible that the five year-old child's statements, as reported by plaintiff in court, had been influenced by his visit with the preacher. When asked whether the children had a good relationship with defendant, plaintiff replied, "As far as I know." The children are doing well in school and have adjusted to the separation and divorce of their parents.

The trial court made the following pertinent Findings of Fact:

4. There has been a substantial change of circumstances since the entry of the Memorandum of Order in that the Defendant has resided since approximately September 19, 1997 with a person of the opposite gender to whom he is not related by blood or marriage, which is in violation of North Carolina Law, while the children were present in his residence staying overnight.

5. The Plaintiff's communication with her minister and his communication with the parties' minor children concerning the Defendant's adulterous actions was inappropriate and may have put the Defendant in a negative light with his children.

Based on these Findings of Fact, the trial court made the following pertinent Conclusions of Law:

2. The Plaintiff is entitled to an order prohibiting the Defendant from having any person of the opposite gender, not related by blood or marriage, staying with him after midnight when the minor children are in his physical custody and control, whether at his residence or at any other location.

. . .

5. This Order is in the best interest of the parties and the parties' minor children. . . .

6. The cohabitation of the Defendant with a person of the opposite sex to whom he is not related by blood or marriage is a violation of North Carolina General Statute Sec. 14-184 "Fornication and Adultery." The court has the authority to appropriately condition the terms of the Defendant's custody/visitation with the minor children to protect them from exposure to such activity which is a misdemeanor in the State of North Carolina.

**BROWNING v. HELFF**

[136 N.C. App. 420 (2000)]

The trial court thereafter granted plaintiff's motion in the cause and ordered that "Defendant shall not have any person of the opposite gender, not related by blood or marriage, staying with him after midnight when the minor children are in his physical custody and control, whether at his residence or at any other location." Defendant appeals.

_____

The dispositive issue on appeal is whether the trial court erred in modifying defendant's visitation privileges.

Defendant argues that the trial court erred in modifying his visitation privileges because the court failed to find a substantial change in circumstances affecting the welfare of the minor children since the entry of the preexisting order. We agree.

In cases involving child custody, the trial court is vested with broad discretion. *In re Peal*, 305 N.C. 640, 645, 290 S.E.2d 664, 667 (1982). Matters of custody expressly include visitation rights. N.C. Gen. Stat. § 50A-2(2) (1989); *See also Beck v. Beck*, 64 N.C. App. 89, 306 S.E.2d 580 (1983). The decision of the trial court should not be upset on appeal absent a clear showing of abuse of discretion. *Falls v. Falls*, 52 N.C. App. 203, 209, 278 S.E.2d 546, 551, *disc. review denied*, 304 N.C. 390, 285 S.E.2d 831 (1981). Findings of fact by a trial court must be supported by substantial evidence. *Wright v. Auto Sales, Inc.*, 72 N.C. App. 449, 325 S.E.2d 493 (1985). A trial court's findings of fact in a bench trial have the force of a jury verdict and are conclusive on appeal if there is evidence to support them. *Hunt v. Hunt*, 85 N.C. App. 484, 355 S.E.2d 519 (1987). However, the trial court's conclusions of law are reviewable *de novo*. *Wright*, 72 N.C. App. 449, 325 S.E.2d 493.

A court order for custody of a minor child "may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances . . . ." N.C. Gen. Stat. § 50-13.7(a) (1995). According to our Supreme Court, a custody order may not be modified until the moving party shows there has been a substantial change in circumstances affecting the welfare of the minor child. *Pulliam v. Smith*, 348 N.C. 616, 501 S.E.2d 898 (1998). The required change in circumstances need not have adverse effects on the child. *Id.* "[A] showing of a change in circumstances that is, or is likely to be, beneficial to the child may also warrant a change in custody." *Id.* at 620, 501 S.E.2d at 900. Once the moving party has shown a substantial change in circumstances affecting the welfare of the minor child, the

trial court must determine whether a change in custody is in the best interest of the child. *Id.* at 619, 501 S.E.2d at 899. "The welfare of the child has always been the polar star which guides courts in awarding custody." *Id.* (citing *Shepherd v. Shepherd*, 273 N.C. 71, 75, 159 S.E.2d 357, 361 (1968)).

In the present case, an initial custody and visitation determination was made when the parties entered into a Memorandum of Order effective 12 March 1997. Plaintiff sought to modify the visitation by filing a Motion in the Cause. Therefore, plaintiff had the burden to prove that a substantial change in circumstances occurred since 12 March 1997 and that the changed circumstances affected the welfare of the children in some manner.

The following evidence of changed circumstances affecting the welfare of the children was presented at the hearing. An unrelated adult female has resided in defendant's residence since September 1997. By defendant's admission, defendant and the unrelated female sleep in the same bed and the children may have seen them in bed together on one or more occasions. Defendant testified that Karen Barone is "involved in every part of [the children's] lives." According to plaintiff's testimony, her son stated that "when he gets scared at night, he can't go into daddy's room because he's afraid to wake [Karen Barone] up . . . that he thinks daddy is doing something wrong. And he doesn't know who's who in the bed." We conclude that there was competent evidence to support the trial court's finding that "[t]here has been a substantial change of circumstances since the entry of the Memorandum of Order in that the Defendant has resided since approximately September 19, 1997 with a person of the opposite gender to whom he is not related by blood or marriage[.]"

However, the trial court failed to make any finding of fact regarding any effect the change of circumstances may have had on the welfare of the children. "[T]he modification of a custody decree must be supported by findings of fact based on competent evidence that there has been a substantial change of circumstances affecting the welfare of the child[.]" *Id.* at 618-19, 501 S.E.2d at 899 (quoting *Blackley v. Blackley*, 285 N.C. 358, 362, 204 S.E.2d 678, 681 (1974)). In Finding of Fact Number 4, the trial court states that the children "were present in [defendant's] residence staying overnight" while defendant was residing with a person of the opposite gender to whom he is not related. The fact that the children were present, however, cannot be construed as a finding that the children's welfare was affected. This is especially true in light of the fact that the parties crossed out a pro-

PIEDMONT TRIAD REG'L WATER AUTH. v. SUMNER HILLS, INC.

[136 N.C. App. 425 (2000)]

vision on the face of the Memorandum which stated: "The parties agree not to cohabitate with members of the opposite sex to whom they are not related while the children are in their home." Similarly, the trial court's observation in Finding of Fact Number 4 that defendant's conduct "is in violation of North Carolina Law" fails to establish that the children's welfare was affected by the change of circumstances.

In the present case, the trial court only partially discharged its duty in finding that a change in circumstances occurred without also finding whether plaintiff had met her burden of showing the effect, if any, of such change upon the welfare of the children. It is the effect on the children upon which the trial court must focus in determining whether to modify custody. Since the trial court made no such determination in this case, it was not empowered to reopen the custody issue and determine what was in the best interest of the children. Accordingly, the order of the trial court is vacated and remanded for a determination with findings of fact of how, if at all, the substantial change of circumstances affected the welfare of the minor children.

Vacated and remanded for further findings of fact.

Chief Judge EAGLES and Judge MARTIN concur.