L'TANYA MOORE, Plaintiff v. OLUSOGA MILES ONAFOWORA, Defendant

No. COA10-376

(Filed 21 December 2010)

**1. Child Custody and Support— child support obligation—use of records from prior year—no abuse of discretion**

The trial court did not abuse its discretion in using defendant's average monthly income reflected in the most complete records from 2007 to determine his 2009 income for purposes of setting his child support obligation where defendant submitted incomplete financial records from 2008 and 2009.

**2. Child Custody and Support— sole custody to plaintiff—no abuse of discretion**

The trial court did not abuse its discretion in a child custody matter by awarding sole custody of the child to plaintiff where the trial court's decision was fully supported by the record.

Appeal by defendant from orders entered 13 July 2009 and 26 August 2009 by Judge Donnie Hoover in Mecklenburg County District Court. Heard in the Court of Appeals 26 October 2010.

*James A. Warren for plaintiff-appellee.*

*Horack, Talley, Pharr & Lowndes, P.A., by Kary C. Watson and Lauren M. Vaughn, for defendant-appellant.*

BRYANT, Judge.

Because defendant submitted incomplete financial records for 2008 and 2009 and the most complete records for 2007, we cannot say the trial court abused its discretion in using the 2007 records to aid in determining defendant's income in 2009. Accordingly, we affirm the trial court's determination of defendant's child support obligation.

*Procedural History*

On 26 April 2007, plaintiff-mother L'Tanya Moore (Moore) filed a complaint for child custody and child support for minor child M. Onafowora, born 31 December 2000, as well as counsel fees. On 27 June 2007, after finding that Moore and defendant Olusoga Miles Onafowora (Onafowora) were the parents of the minor child, District Court Judge Norman T. Owens entered an order for temporary

custody and temporary child support. The trial court noted Onafowora's failure to appear and produce documentation and found that

instead of coming to court, [Onafowora] on the morning of [the hearing] picked up the minor child at day care after [Moore] had dropped the child off and apparently took the minor child to Durham, North Carolina where he has arbitrarily decided and informed [Moore] that the child will spend the next two (2) weeks.

In support of its temporary order, the trial court found that the minor child has resided almost exclusively with Moore, and that Moore earned a gross monthly income of $1,512.29 and incurred a monthly health insurance premium attributable to the minor child of $228.48. Further, Onafowora did not provide the court with any documentation of his income, as set out in his subpoena, did not respond to the Request for Production of Documentation, and did not comply with the local rules concerning the filing of an Affidavit of Financial Standing. The court concluded that it was in the best interest of the minor child that Moore be awarded the minor child's care, custody, and control.

On 12 July 2007, Onafowora made a motion to set aside the order and stay its enforcement and, on 7 August 2007, made a motion to dismiss the custody action and change the venue of the child support action. In an order filed 26 October 2007, the trial court denied Onafowora's motions. On 23 January 2008, Onaforowa filed a motion to establish visitation. On 8 December 2008, the trial court entered a memorandum of judgment/order in which Onaforowa was granted visitation every other weekend and every Wednesday. In the interim, on 30 July 2008, Onafowora submitted an affidavit of income information to the trial court indicating that his average monthly gross income in 2008 was $3,587.82.

On 2 February 2009, the matter came before District Court Judge Donnie Hoover for a hearing on child custody, visitation, child support, and child support arrearage. On 13 July 2009, the trial court entered an order in which it found that, in 2007, Moore earned a gross income of $3,719.58[1] per month; in 2008, $3,927.67 per month; and at the time of the hearing, Moore earned a gross income of $5,260.12 per month. On behalf of the minor child, Moore incurred insurance pre-

---

1. The trial court found that Moore's Affidavit of Financial Standing, relied upon in the order for Temporary Child Custody and Temporary Child Support, incorrectly reflected Moore's monthly gross income due to a mistake by her attorney.

miums of $186.46 per month and a work related child care cost of $262.50. Taking into account bank deposits from sources other than Onafowora's employer, the court found that Onafowora's gross income per month was $11,667.60 in 2007; $11,791.10 in 2008; and at the time of the hearing, $11,967.61 per month. Based on these new figures, the trial court recalculated Onafowora's child support obligation and determined that, from May 2007 to May 2009, he was in arrears $14,353.80. Onafowora was ordered to make child support payments in the amount of $1,293.79 and payments on his arrearage in the amount of $106.21 for a total monthly payment amount of $1,400.00.

Regarding custody and visitation, the trial court found that "[Moore] has been and remains the primary parent of the minor child, being the parent who has consistently seen to the emotional, physical, and financial needs of the minor child." Accordingly, the trial court concluded that it was in the best interests of the minor child that her care, custody, and control be vested with Moore and that the minor child have visitation with Onafowora.

On 26 August 2009, the trial court entered an order requiring Onafowora to pay Moore's counsel fees in the amount of $20,000.00. Onafowora appeals.

_____

On appeal, Onafowora raises two issues: Did the trial court err in (I) setting his child support obligation and (II) awarding Moore sole custody of the minor child. For the reasons set forth below, we affirm the trial court's decision.

*I*

[1] Onafowora first argues that the trial court erred in setting his child support obligation by erroneously imputing current income to him based on bank statements from previous years. We disagree. "When determining a child support award, a trial judge has a high level of discretion, not only in setting the amount of the award, but also in establishing an appropriate remedy." *State ex rel. Williams v. Williams*, 179 N.C. App. 838, 839, 635 S.E.2d 495, 496 (2006) (citing *Taylor v. Taylor*, 128 N.C. App. 180, 182, 493 S.E.2d 819, 820 (1997)). "Child support orders entered by a trial court are accorded substantial deference by appellate courts and our review is limited to a determination of whether there was a clear abuse of discretion." *Mason v. Erwin*, 157 N.C. App. 284, 287, 579 S.E.2d 120, 122 (2003) (citing *Leary v. Leary*, 152 N.C. App. 438, 441, 567 S.E.2d 834, 837 (2002)).

[A]bsent a clear abuse of discretion, a judge's determination of what is a proper amount of child support will not be disturbed on appeal. . . . A judge is subject to reversal for abuse of discretion only upon a showing by the litigant that the challenged actions are manifestly unsupported by reason.

*Bowers v. Bowers*, 141 N.C. App. 729, 731, 541 S.E.2d 508, 509 (2001) (quoting *Plott v. Plott*, 313 N.C. 63, 69, 326 S.E.2d 863, 868 (1985)) (internal quotations omitted).

Under North Carolina General Statutes, section 50-13.4,

(c) Payments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case.

N.C. Gen. Stat. § 50-13.4(c) (2009). "When determining a parent's child support obligation . . . a court must determine each parent's gross income. A parent's child support obligation should be based on the parent's 'actual income at the time the order is made.' " *Head v. Mosier*, 197 N.C. App. 328, 335, 677 S.E.2d 191, 197 (2009) (citing *Hodges v. Hodges*, 147 N.C. App. 478, 483, 556 S.E.2d 7, 10 (2001)).

Capacity to earn, however, may be the basis of an award if it is based upon a proper finding that the husband is deliberately depressing his income or indulging himself in excessive spending because of a disregard of his marital obligation to provide reasonable support for his wife and children.

*Hartsell v. Hartsell*, 189 N.C. App. 65, 77, 657 S.E.2d 724, 731 (2008) (citing *Beall v. Beall*, 290 N.C. 669, 674, 228 S.E.2d 407, 410 (1976)). "Our Supreme Court has held that 'earning capacity' to determine child support can only be used where there are findings, based on competent evidence, to support a conclusion that the supporting spouse or parent is deliberately suppressing his or her income to avoid family responsibilities." *Bowers v. Bowers*, 141 N.C. App. 729, 732, 541 S.E.2d 508, 510 (2001) (citations omitted). "Thus, 'a showing of bad faith income depression by the parent is a mandatory prerequisite for imputing income to that parent.' " *Hartsell*, 189 N.C. App. at 77, 657 S.E.2d at 731 (quoting *Sharpe v. Nobles*, 127 N.C. App. 705, 706, 493 S.E.2d 288, 289 (1997)). Where there is no finding of bad faith, the law of imputation is inapplicable. *See Diehl v. Diehl*, 177

N.C. App. 642, 650, 630 S.E.2d 25, 30 (2006) (citing *Burnett v. Wheeler*, 128 N.C. App. 174, 177, 493 S.E.2d 804, 806 (1997) (holding that, when determining a defendant's total gross income, considering the defendant's income from all available sources does not amount to imputing income)).

In *Burnett*, Mr. Wheeler contended that the trial court erred by imputing to him income of $77,000.00 despite evidence that his actual income was $29,000.00 per year. 128 N.C. App. at 176-77, 493 S.E.2d at 806. This Court acknowledged that "a person's capacity to earn income may be the basis of an award only if there is a finding that the party deliberately depressed his income or otherwise acted in deliberate disregard of the obligation to provide reasonable support for the child." *Id.* at 177, 493 S.E.2d at 806. However, this Court reasoned that Mr. Wheeler mischaracterized the trial court's order: the trial court did not impute income. Rather, the court considered all of Mr. Wheeler's available income sources, such as: his retirement accounts, which totaled $722,384.00; his stock investments valued at $60,000.00; and land valued at $74,000.00. *Id.* We held that, in using all of Mr. Wheeler's available sources of income to arrive at his annual gross income, the trial court did not abuse its discretion. *Id.*

Here, in his 2008 response to Moore's discovery questions, Onafowora stated that the only car he owned was a 1996 Volvo but the car was sold in 2006. However, at the hearing for child custody and support, Onafowora testified that he owned a 2008 Mercedes S550 purchased in the fourth quarter of 2007. In addition, the court received evidence of a 21 August 2007 general warranty deed and a deed of trust with promissory note showing Onaforowa purchased a lot in Reflections Point, Belmont, North Carolina in the amount of $806,125.00. Onafowora had failed to include this property transaction in the response to the discovery request concerning Onaforowa's assets. As to his income, Onaforowa testified that he ran an event-planning business in 2007, and evidence was produced that he deposited $75,371.76 from that business into his personal checking accounts during that year.

The trial court found that Onafowora was employed by Trinity Partners and in 2007 had a gross income from that employer of $4,116.66 per month; in 2008, $4,240.16; and, at the time of the hearing, $4,416.67 per month. In addition, the trial court found that Onaforowa "had a side business producing parties at which patrons pay an entrance fee and there is entertainment." In unchallenged finding of fact 12 and in finding of fact 13 the trial court stated the following:

12. ... The most complete records provided by defendant were those for 2007. For eight months in 2007 [Onafowora] deposited into his Wachovia account number ending in ... 6767 $38,631.51 in addition to his net income from Trinity Partners and not including bank transfers, overdraft charges, or refunds. He deposited into his Wachovia account number ending in ... 0975 for that eight month period $21,776.00. This is a total of $60,407.51 in gross income to the defendant for the first eight months of 2007 over and above his gross monthly income from his employment with Trinity Partners, an average of $7,550.94 per month.

13. The court finds that the defendant has gross monthly income in addition to that he receives from his employment with Trinity Partners in the amount of $7,550.94. His total gross monthly income from all sources for 2007 averaged $11,667.60. His total gross monthly income for 2008 averaged $11,791.10. His total gross monthly income for 2009 averaged $11,967.61. The court finds the defendant's current gross monthly income to be $11,967.61.

While the trial court did not make a finding of deliberate suppression of income, it did properly consider Onaforowa's income from all available sources. Given Onafowora's incomplete financial records in 2008 and 2009, we cannot say, under the circumstances of this case, that the trial court abused its discretion in using Onafowora's average monthly income reflected in the most complete records from 2007, to determine his 2009 income for purposes of setting his child support obligation. *See Burnett*, 128 N.C. App. 174, 493 S.E.2d 804. Accordingly, Onafowora's argument is overruled.

*II*

[2] Next, Onafowora argues that the trial court erred and abused it discretion in awarding sole custody of the minor child to Moore. We disagree.

"In child custody cases, the trial court is vested with broad discretion." *Shipman v. Shipman*, 155 N.C. App. 523, 527, 573 S.E.2d 755, 758 (2002) (citing *Browning v. Helff*, 136 N.C. App. 420, 423, 524 S.E.2d 95, 97 (2000)). "The decision of the trial court as to child custody 'should not be upset on appeal absent a clear showing of abuse of discretion.' " *Evans v. Evans*, 169 N.C. App. 358, 610 S.E.2d 264, 267 (2005) (quoting *Browning*, 136 N.C. App. at 423, 524 S.E.2d at 97).

In a child custody case, the trial court's findings of fact are binding on this Court if they are supported by competent evidence. *See Sain v. Sain*, 134 N.C. App. 460, 464, 517 S.E.2d 921, 925 (1999). "However, the findings of fact and conclusions of law must be sufficient for this Court to determine whether the judgment is adequately supported by competent evidence." *Cantrell v. Wishon*, 141 N.C. App. 340, 342, 540 S.E.2d 804, 805 (2000); *see Buckingham v. Buckingham*, 134 N.C. App. 82, 88-89, 516 S.E.2d 869, 874, *review denied*, 351 N.C. 100, 540 S.E.2d 353 (1999). "Generally, on appeal from a case heard without a jury, the trial court's findings of fact are conclusive if there is evidence to support them, even though the evidence might sustain a finding to the contrary." *Raynor v. Odom*, 124 N.C. App. 724, 729, 478 S.E.2d 655, 658 (1996).

*Davis v. McMillian*, 152 N.C. App. 53, 58, 567 S.E.2d 159, 162 (2002).

Onafowora challenges the following findings of fact:

23.    . . . Although [Onafowora] did take care of [the minor child] some while [Moore] was in school, [Moore] was the primary parent of the minor child following the child's birth.

. . .

47.    [The minor child] suffers from asthma. [Onafowora] is not adequately versed in the minor child's medications or medical problems. The court finds that he is not adequately prepared to deal with an asthma attack if the minor child has one.

. . .

49.    At one point the minor child needed surgery. [Moore] informed [Onafowora] that the minor child was going to have the surgery. [Onafowora] demanded that they get a second opinion. However, although he had an opportunity to do so and although he continued to complain about the child not having a second opinion, he never actually sought a second opinion.

At the custody hearing, Moore testified that, after the minor child was born, she lived with Moore for approximately a year and a half: she bathed the child, fed her, and met her physical and emotional needs. Onafowora visited the child two-to-three times a week. Each visit lasted 30 to 45 minutes, and Onafowora never took the child away from Moore's residence. Further, Moore also testified that she did not tell Onafowora to stay away from the residence or not to visit.

After the birth of the minor child, Onafowora purchased diapers and infant formula but rejected any request to provide more, such as help with daycare expenses. Moore's daycare provider, Mary Hemphill, testified that she cared for the minor child between three months and twenty-three months of age and, over the course of those months, Onafowora came to the daycare less the five times.

Moore also testified to the minor child's medical needs: the minor child has "nasal problems." When asked what prescriptions the child was on, Moore listed Tamiflu, Orafil, Advair, and Retinol "for her allergies." Onafowora could not name those medications when asked, and Moore testified that, when she discussed the medications with Onafowora, she did not "feel like he paid attention . . . ." As to the contention that Onaforowa demanded a second opinion regarding the minor child's surgery, Moore testified as follows:

Q. Ms. Kelling asked [Onafowora] yesterday about a second opinion. Did Mr. Onafowora ask you to get a second opinion prior to your daughter's surgery?

A. No, Mr. Onafowora said, "I need to research about this surgery." So, I let him go and do this research. I checked with him in a few days, asked him if he'd done his research, he said, No. He said he still had questions for the doctor. I provided him the doctor's name as well as the doctor's phone number. I followed up with him on several occasions asking had he spoke to the doctor, and each time it was, no; another time it was, "I left a message. He hasn't called me back." Two days later I said, "You still haven't heard from the doctor?" "No." I said, "I find that strange because at least the doctor's nurse would have called you back by now." So I don't believe he was trying to get his questions answered.

Onafowora also contested the following finding:

36. [Onafowora's] increased participation with the minor child, while good, seems to have arisen out of his desire to have his way over the income tax return [sic] and child support. . . . [Moore] has been and remains the primary parent of the minor child, being the parent who has consistently seen to the emotional, physical, and financial needs of the minor child.

At the hearing, Moore presented a verbatim transcript of recorded conversations between herself and Onafowora regarding a $1,500.00 tax refund, in which Onafowora indicates Moore should be thankful

to him for helping her receive the refund. In addition, Moore related a conversation in which Onafowora raised the question "[w]hy do I have to give you money to take care of our—my daughter." These actions indicate a reluctance by Onafowora to accept responsibility for the needs of the child, including financial responsibility. After a review of the record, we hold there is sufficient evidence to support the trial court's findings of fact. Moreover, we hold the trial court's findings support the following conclusions:

> 3.  [Moore] is a fit, suitable and proper person to have the care, custody, and control of the minor child who is the subject of this action . . . .
>
> 4.  [Onafowora] is a fit, suitable and proper person to have reasonable visitation with the minor child . . . .
>
> 5.  It is in the best interest of the minor child that her care, custody, and control be vested with [Moore].

As the trial court's decision is fully supported by the record, there is no abuse of discretion. Accordingly, Onafowora's argument is overruled.

Affirmed.

Judges STEELMAN and ERVIN concur.