An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e    P r o c e d u r e .

NO. COA13-1340
NORTH CAROLINA COURT OF APPEALS

Filed:  3 June 2014

CANDANCE KNOWLES (ARNETT),
    Plaintiff,

v.                                    Union County
                                      No. 08 CVD 3735
JOHN PAUL BENNETT, SR.,
    Defendant.

Appeal by defendant from order entered 9 April 2013 by Judge Joseph J. Williams, from orders entered 19 March 2012, 9 August 2012, and 8 November 2012 by Judge Stephen V. Higdon, and from order entered 17 April 2012 by Judge N. Hunt Gwyn, all in Union County District Court.  Heard in the Court of Appeals 7 April 2014.

> *Law Office of Shawna Collins, by Carrie L. Quick, for plaintiff-appellee.*

> *John P. Bennett, Sr., pro se, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant father appeals from an order awarding sole

custody of minor child R.H.B. to plaintiff[1] mother, and awarding father specified afternoons of supervised visitation and overnight weekend visitations in father's home only if his other daughter from a previous relationship is not in the home. We affirm.

Our recitation of the facts and procedural history is limited to those deemed relevant to the issues before us on appeal. The evidence in the record tended to show that father and mother were married in 2003, divorced in 2007, and that the minor child, R.H.B., was born to the marriage in 2004. In September 2008, father and mother entered into a Child Custody Agreement, which established that they would share joint custody of R.H.B., vested the minor child's primary physical custody in mother, and set forth father's visitation schedule and monthly child support obligations. In February 2009, the trial court entered an order which decreed that all matters of child custody were resolved by the parties' September 2008 Child Custody Agreement, and that this Agreement was to be incorporated as an order of the trial court.

In September 2010, father moved to reduce the amount of his

---

[1] Although the record reflects plaintiff's name as "Candace Hanes Knowles," "Candace Knowles (now Arnett)," and "Candace H. Arnett," the appellation representing this party in our caption matches that of the trial court's 9 April 2013 order, which identifies this party as "Candance Knowles (Arnett)."

court-ordered-by-agreement child support obligation on the grounds that his income had decreased because M.M.B., his then-seventeen-year-old daughter from a previous relationship, was living with him and required ongoing outpatient and in-hospital medical treatment for her diagnoses of severe schizoaffective disorder and post-traumatic stress syndrome. In December 2010, after attending court-ordered mediation to resolve subsequent issues related to custody or visitation, the parties entered into a Parenting Agreement, which was also entered as an order of the trial court. Among the "Special Parenting Arrangements" set forth in the Parenting Agreement was the provision that "[b]oth parents agree that [R.H.B.] will not be left in the primary care of her sister, [M.M.B.]"

In March 2012, mother filed a motion to modify father's visitation and moved for an ex parte suspension of his visitation until the matter could be heard. Mother alleged that, two days before filing the motion, she learned that father's daughter, M.M.B., was "recently arrested" for "felon[ious] assault inflicting serious bodily injury with aggravated physical force," which the record indicates was related to an incident from 2009 when an employee of a medical facility for the North Carolina Department of Correction was allegedly the victim of a "[b]rutal [a]ssault" that "includ[ed]

[s]trangulation." Mother also alleged in her motion that M.M.B.'s mental health disorders "cause[d] significant and drastic unprovoked reactions from [M.M.B.,] such as jumping out of moving vehicles, running out of the residence at night, suicidal thoughts, and paranoia regarding those that attempt to take care of her." Mother also alleged that: because M.M.B.'s "mental health issues are so significant[, father] . . . has been unable to work and has provided 24 hour care for her since at least January of 2011"; M.M.B. left father's residence after dark and father "chas[ed] his older daughter while the minor child, [R.H.B.,] was following behind with no shoes and with little to no supervision from [father]"; and R.H.B.'s teachers have indicated that R.H.B. "appears exhausted and extremely tired on the days that [father] returns the minor child to school" and "has incurred several tardies this school year on the days [father] returns her to school because [father] is late." Mother further alleged that R.H.B. "now makes little indication to [mother] of anything regarding [father's] home and the minor child's well-being at [father's] home due to fear of her being in trouble with [father] or [father] being upset with her." As a consequence of these and other allegations, mother asserted that there had been a substantial change in circumstances since the entry of the prior child custody and

visitation orders warranting a modification of custody and visitation, and moved the trial court to enter an ex parte order suspending father's visitation pending a hearing on the matter.

One week later, on 19 March 2012, the court entered an ex parte order suspending father's visitation with R.H.B. pending a hearing. In June 2012, father moved to rescind the ex parte order and moved to dismiss mother's motion to modify visitation. On 22 February 2013, father moved to exclude all of mother's witnesses from the hearing on this matter due to mother's purported failure or refusal to timely serve a list of such witnesses upon father in contravention of N.C.G.S. § 1A-1, Rule 26 and local district court rules. The motion was denied on 25 February 2013.

On 9 April 2013, the trial court considered the motion regarding the ex parte order suspending father's visitation and the motion to modify custody and visitation. After making extensive findings of fact—many of which concern M.M.B.'s mental health issues and various incidents of violence and other disruptive or erratic behaviors related to those issues and disorders—the trial court concluded that there had been a substantial change in circumstances affecting the welfare of the minor child, R.H.B., since the entry of the last orders concerning child custody and visitation. The court awarded

mother sole custody of the minor child and awarded father limited supervised visitation with the minor child, and ordered that such visitation "may be expanded to include overnight weekend visitations" "[s]hould [M.M.B.] not be in the father's home," but that, "as long as [M.M.B.] remains in [father's] home[,] overnight visitations will not take place." Finally, the court found that, on the day the ex parte order was issued, "there was no emergency custody situation that existed whereby the child was being physically assaulted or sexually abused," and father "had not removed the child from the [S]tate with an intent to avoid the [c]ourt's jurisdiction"; thus, the court determined that the 19 March 2012 ex parte order "was improperly entered and should not be extended." Father appeals from the 9 April 2013 order modifying custody and visitation, as well as from the ex parte order that had suspended his visitation, from an order for Eastover Psychological and Psychiatric Group, P.A. to produce any and all medical records concerning and associated with M.M.B., from an order compelling the production of medical records specifically for 2012 from Eastover Psychological and Psychiatric Group, P.A. concerning and associated with M.M.B., and from an order denying father's motion for a protective order of these same medical records.

_____

Father first contends the trial court erred by denying his motion to exclude all of mother's witnesses at the hearing due to father's allegation that mother's counsel purportedly failed or refused to timely serve a list of such witnesses upon him in contravention of local district court rules. "It is a general rule that orders regarding matters of discovery are within the discretion of the trial court and will not be upset on appeal absent a showing of abuse of discretion." *Hudson v. Hudson*, 34 N.C. App. 144, 145, 237 S.E.2d 479, 480, *disc. review denied*, 293 N.C. 589, 239 S.E.2d 264 (1977); *see also White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985) ("A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.").

Father asserts, without any legal support, that he is entitled to a new trial because he suffered "substantial and irreparable prejudice" as a result of the court's denial of his motion to exclude all of mother's witnesses. He argues that opposing counsel's failure to provide a copy of mother's witness list was contrary to Rule 18.4 of Judicial District 20B's Family Court and General Civil Court Rules ("the Rules"). Rule 18.4 provides: "Attendance at Pretrial Conferences are mandatory for

all attorneys of record and all parties. The purpose of a pretrial conference [includes] . . . to finalize proposed witness lists." Loc. Rules for Dist. Ct., N.C. Jud. Dist. 20B, Fam. Ct. & Gen. Civ. Ct. Rules, R. 18.4 (effective Sept. 1, 2012). "[F]ailure of the opposing party to cooperate with providing the appropriate information/documents to complete the order may result in the imposition of sanctions." *Id.* The Rules also provide that "[t]he Case Coordinator and the Judge shall schedule . . . pretrial conferences as necessary to comply with these [R]ules." Loc. Rules for Dist. Ct., N.C. Jud. Dist. 20B, Fam. Ct. & Gen. Civ. Ct. Rules, R. 18.1 (effective Sept. 1, 2012). Our review of the record shows that no such pretrial conference was scheduled by the court or by a case coordinator, even though father asserts that he met with mother's counsel "in what [father] considered a pretrial conference."

Instead, the record shows that, during a 22 October 2012 hearing, father asked the court for "any sort of pretrial meeting or anything like that to determine who [mother is] going to call for witnesses," to which the court responded: "You can communicate with [mother's counsel], but I don't know there's any requirements for those matters as far as—at this stage as far as pretrial conference, getting each other a list of

witnesses." After this hearing, father stepped out of the courtroom and spoke to mother's counsel, during which time father asserts he asked counsel for a copy of mother's witness list. Although father suggests, without support, that he "considered [this conversation] a pretrial conference" that would invoke the requirements and obligations of Local Rule 18.4, because the record does not show that father requested this information in accordance with the procedures set forth by any local rule or statutory provision, we cannot agree with his contention that the trial court's decision to deny his motion to exclude mother's witnesses was a prejudicial error in contravention to law. Rather, the record shows that mother's counsel stated the following in open court:

> I told him I didn't have a problem providing that information as long as he used the proper procedures [in accordance with N.C.G.S. § 1A-1, Rule 26] and (unintelligible) accordingly. I explained to him that there were rules to do that and it was for him to issue those to [mother] so that she could comply. We never received that information.

Consequently, after determining that father's motion was "not requested in the proper manner to put it before the court and would be an issue," the court denied father's motion. Because father has not presented argument to establish that the trial court's decision to deny father's motion to exclude mother's

witnesses "was so arbitrary that it could not have been the result of a reasoned decision," *see White*, 312 N.C. at 777, 324 S.E.2d at 833, we decline to consider this issue further.

Father next contends the trial court erred by concluding that there has been a substantial change in circumstances affecting the welfare of the minor child. In cases involving child custody, which matters "expressly include visitation rights," *Browning v. Helff*, 136 N.C. App. 420, 423, 524 S.E.2d 95, 97 (2000), "the trial court is vested with broad discretion." *Id.* "The decision of the trial court should not be upset on appeal absent a clear showing of abuse of discretion." *Id.* "As in most child custody proceedings, a trial court's principal objective is to measure whether a change in custody will serve to promote the child's best interests." *Shipman v. Shipman*, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003). "Therefore, if the trial court does indeed determine that a substantial change in circumstances affects the welfare of the child, it may only modify the existing custody order if it further concludes that a change in custody is in the child's best interests." *Id.*

When "facts pertinent to [a] custody issue were not disclosed to the court at the time the original custody decree was rendered, courts have held that a prior decree is not res

judicata as to those facts not before the court." *Newsome v. Newsome*, 42 N.C. App. 416, 425, 256 S.E.2d 849, 854 (1979). "[W]here facts affecting a child's welfare existed at the time of the entry of a custody decree but were not disclosed to the court, . . . these facts may be considered in a subsequent custody determination." *Id.; see also Woodring v. Woodring*, __ N.C. App. __, __, 745 S.E.2d 13, 20 (2013) ("[W]hen evaluating whether there has been a substantial change in circumstances, courts may only consider events which occurred after the entry of the previous order, *unless the events were previously undisclosed to the court*." (emphasis added)).

A close examination of father's argument with respect to this issue on appeal reveals that he challenges only one of the trial court's seventy-five findings of fact. However, even without this challenged finding of fact, father concedes that, "yes[,] you can draw that conclusion[——that there has been a substantial change in circumstances——]from the finding of facts [sic] that were entered." Instead, it appears that father argues that the court's conclusion that there has been a substantial change in circumstances affecting the welfare of the minor child was in error because "most were facts know [sic] for years" by mother. However, as we recognized above, when considering whether there has been a substantial change in

circumstances affecting the welfare of the child, a court may consider events which occurred after the entry of a previous custody order when such events were previously undisclosed to the court. *See Woodring*, __ N.C. App. at __, 745 S.E.2d at 20. Here, father has not demonstrated that the events that are the subject of the extensive findings of fact in the court's 9 April 2013 order were disclosed to the court before it entered its December 2010 order, which incorporated the parties' Parenting Agreement to modify child custody and visitation with respect to the minor child, R.H.B. Thus, he has not shown that the court erred or abused its discretion by considering these events in concluding that there has been a substantial change in circumstances affecting the welfare of the minor child, and we overrule this issue on appeal.

Finally, father contends the trial court erred by declining to consider his N.C.G.S. § 1A-1, Rule 60(b) motion, filed with the trial court in June 2013, in which he prayed that the court vacate the orders from which he had appealed to this Court two months prior. The record indicates that the trial court declined to consider father's June 2013 Rule 60(b) motion because the court concluded that it had been divested of jurisdiction to hear the motion upon father's filing of a notice of appeal for the present appeal.

"The trial court does not have jurisdiction . . . to rule on motions pursuant to Rule 60(b) where such motion is made after the notice of appeal has been given." *York v. Taylor*, 79 N.C. App. 653, 655, 339 S.E.2d 830, 831 (1986); *see also Wiggins v. Bunch*, 280 N.C. 106, 111, 184 S.E.2d 879, 881 (1971) ("[T]he general rule is that when an appeal is taken from the district court the latter court is divested of jurisdiction, except to take action in aid of the appeal, *until the case is remanded to it by the appellate court*." (emphasis added) (internal quotation marks omitted)). "As a general rule, an appellate court's jurisdiction trumps that of the trial court when one party files a notice of appeal *unless the case has been remanded from the appellate court* for further determination in the trial court." *Hall v. Cohen*, 177 N.C. App. 456, 458, 628 S.E.2d 469, 471 (2006) (emphasis added), *appeal after remand*, 186 N.C. App. 132, 650 S.E.2d 67 (2007) (unpublished); *see also Wiggins*, 280 N.C. at 111, 184 S.E.2d at 881 ("[D]uring the pendency of an appeal it is generally held that the district court is without power . . . to vacate, alter or amend the judgment under Rule 60(b), whether the 60(b) motion is made prior to or after the appeal is taken, *except with permission of the appellate court*." (emphasis added) (internal quotation marks omitted)). "Upon the appellate court's notification of a

Rule 60(b) motion filed with the trial court, this Court will remand the matter to the trial court so the . . . court may hold an evidentiary hearing and indicate 'how it [is] inclined to rule on the motion were the appeal not pending.'" *Hall*, 177 N.C. App. at 458, 628 S.E.2d at 471 (alteration in original) (quoting *Bell v. Martin*, 43 N.C. App. 134, 142, 258 S.E.2d 403, 409 (1979), *rev'd on other grounds*, 299 N.C. 715, 264 S.E.2d 101 (1980)).

In the present case, father failed to notify this Court that he had filed a Rule 60(b) motion with the trial court and has not sought remand. Accordingly, the trial court correctly determined that it lacked jurisdiction to consider father's Rule 60(b) motion after notice of appeal had been filed, and we overrule this issue on appeal. *See also Alekman v. Ashley's Lawn Care & Landscaping, Inc.*, 185 N.C. App. 158, slip op. at 11 (2007) (unpublished) ("Here, plaintiffs filed a notice of appeal . . ., yet plaintiffs failed to notify this Court of their Rule 60(b) motion . . . . Thus, the trial court had no jurisdiction to hear a Rule 60(b) motion after notice of appeal has been filed. Plaintiffs failed to properly notice their Rule 60 motion for hearing. This assignment of error is overruled." (citations omitted)).

Because father's remaining issue on appeal concerns an

argument that was not presented to the trial court for consideration during the proceedings, we decline to consider it for the first time on appeal.

Affirmed.

Judges McGEE and CALABRIA concur.

Report per Rule 30(e).