IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-257

Filed 2 April 2024

Mecklenburg County, No. 20SP2207

JACKIE GREGG KNUCKLES, SR., Administrator of the Estate of Jackie Gregg
Knuckles, Jr., Petitioner,

v.

AMINTA DENIESE SIMPSON, Respondent.

Appeal by Petitioner from Order entered 31 August 2022 by Judge John O.

Craig, III, in Mecklenburg County Superior Court. Heard in the Court of Appeals 4

October 2023.

> *Myers Law Firm, PLLC, by Matthew R. Myers, for Petitioner-Appellant.*
>
> *Whitaker and Hamer, PLLC, by Aaron C. Low, for Respondent-Appellee.*

HAMPSON, Judge.

**Factual and Procedural Background**

Jackie Gregg Knuckles, Sr. (Petitioner) appeals from an Order denying a

Petition for Determination of Abandonment by Heir at Law pursuant to N.C. Gen.

Stat. §§ 28A-18-2(a) and 31A-2. The Record before us tends to reflect the following:

Petitioner is the biological father of Jackie Gregg Knuckles, Jr. (Decedent).

Aminta Deniese Simpson (Respondent) is Decedent's biological mother. Decedent

was born on 16 May 1992 and passed away on 14 March 2018. Petitioner was

appointed administrator of Decedent's estate. On 9 December 2020, Petitioner filed

a Petition for Determination of Abandonment by an Heir at Law (Petition). The Petition alleged Respondent "engaged in behavior, both omissions and commissions, which demonstrates a 'willful abandonment of the care and maintenance' of Jackie Gregg Knuckles, Jr., her son, such that any interest she may have in the Estate, as a matter of Intestate Succession, is forfeited pursuant to N.C. Gen[.] Stat. [§] 31A-2[.]" Respondent filed a Response on 8 February 2021 denying the material allegations of the Petition.

Respondent also attached an Affidavit to the Response. The Affidavit averred after Decedent's birth, Decedent lived with Respondent and her other children. Petitioner never lived with Respondent or her children. Respondent alleged Petitioner did not provide support for Decedent during the time Decedent lived with her. Instead, she filed a child support action against Petitioner. Petitioner initially denied paternity, but his paternity was later established by blood testing. Subsequently, the parties entered into a consent child support order. After Petitioner's paternity was established, Petitioner began to visit Decedent at Respondent's house. On or around 3 July 1994, Petitioner's brother picked Decedent up to take him to a pool party with Petitioner's family. After Decedent was not returned to Respondent that evening, Respondent contacted the police and, subsequently, DSS to help return her son. However, in the absence of a custody order Respondent was informed neither the police or DSS would intervene. Respondent further asserted she then attempted to draft a Complaint using a self-help center to

regain her son, but it was not filed because it was not in the proper form. Respondent attempted to go to Petitioner's home when she could to try to see her son but was threatened by his fiancée and friends. Respondent further alleged she had been beaten and intimidated by Petitioner and his acquaintances.

Respondent's affidavit also identified instances where she had seen or made contact with her son. When her son was seven or eight, Respondent saw her son walk into a convenience store where Respondent was working. She observed him go to condominiums nearby and later located her son and was able to see him. However, Petitioner moved away and Respondent was told he had moved to South Carolina. On a later occasion, Respondent discovered where her son was attending high school and visited him in the school office. At another point, Decedent contacted Respondent via Facebook. Respondent was not able to see her son again prior to his death. She did attend his funeral.

The Petition came on for hearing on 11 July 2022 in Mecklenburg County Superior Court. Following an evidentiary hearing, the trial court entered its Order on 31 August 2022. The trial court—having considered testimony, exhibits, arguments of counsel, memoranda, pleadings, and affidavits on file—found as fact:

> 1.    The Petitioner, Gregg Knuckles, Sr. (hereinafter "the Petitioner"), is the duly appointed administrator of the Estate of Gregg Knuckles, Jr. (hereinafter "the Decedent"), which is involved in a wrongful death lawsuit pending in Mecklenburg County. Petitioner is also the natural father of the Decedent.
>
> 2.    The Respondent is the natural mother of the Decedent.

3.    The Petitioner brought this Petition for Determination of Abandonment by Heir at Law on December 9, 2020. The Respondent filed a response on February 9, 2021, which was accompanied by an Affidavit by Mother attached thereto as Exhibit "A".

4.    The Court heard the testimony of the Petitioner, Petitioner's father (James Knuckles), Respondent, Respondent's sister (Malicia Miles), Respondent's pastor and friend (Eleanor Priester), and Respondent's daughter (Asia Maria Miles) and reviewed exhibits submitted in the trial.

5.    The Court finds that Decedent was taken from Respondent in July of 1994 by Petitioner when Decedent was two years old.

6.    Respondent was about 20 years-old in July of 1994, and at the time was the single mother of two other young children and she was working at First Union and IHOP and was going to school at a community college to try and get her degree.

7.    The Court finds that in July of 1994, there was a Child Support proceeding pending in Mecklenburg County with Respondent as Plaintiff and Petitioner as Defendant, Mecklenburg Civil Filing 93-CVD-7175, wherein Petitioner, as Defendant, was ordered to pay $40.00 per week in child support beginning on August 1, 1994.

8.    Prior to this child support obligation taking effect, on the weekend preceding July 4, 1994, Petitioner took Decedent to a cookout when he was two years old and refused to return the child to Respondent and, as there was no custody order in place for the Decedent, the police refused to return Decedent to Respondent.

9.    Respondent attempted to call the police and, on several occasions, went to Petitioner's parents' home to try and see the Decedent, and attempted to get help from the Mecklenburg County Self-help center, but never filed any custody papers.

10. Respondent was attacked and threatened with bodily harm if she attempted to contact the Petitioner or the Decedent by

acquaintances of Petitioner, including his girlfriend "FiFi," and Respondent filed a police report regarding an assault by "FiFi" in January of 1995.

11. Respondent made efforts to locate the Decedent during his childhood and found Decedent and Petitioner on one occasion in February of 2004 but was unable to establish a relationship with Decedent despite some effort to do so and Petitioner and Decedent moved away thereafter and did not tell Respondent where they were.

12. Respondent has four other children other than Decedent that she raised to adulthood as a single parent despite sometimes having to work multiple jobs and being homeless at times.

13. The Court finds that Petitioner has not met its burden of proof by the greater weight of the evidence or by clear, cogent and convincing evidence that Respondent willfully intended to abandon the Decedent following the Decedent being taken from Respondent in July of 1994. Specifically, pursuant to *In re Estate of Lunsford*, 359 N.C. 382, 387, 610 S.E.2d 366, 370 (2005), Petitioner has not shown through the greater weight of the evidence that there was willful or intentional conduct on the part of the Respondent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child and thus Petitioner's Petition should be denied.

Based on these Findings of Fact, the trial court denied the Petition. Petitioner timely filed Notice of Appeal on 28 September 2022.

## Issues

The issues on appeal are whether: (I) there is competent evidence to support the trial court's Findings of Fact; and (II) the Findings of Fact support the trial court's Conclusion Respondent did not willfully abandon Decedent and, thus, Respondent was not barred from inheriting from Decedent's estate under the Intestate Succession

Act.

## Analysis

Petitioner argues the trial court erred in denying his Petition. Petitioner contends Respondent should not be permitted to "reap an undeserved bonanza" from the estate of the parties' son. While Petitioner expends a lot of briefing re-arguing and re-characterizing the facts of this case, ultimately his arguments challenge the sufficiency of the evidence to support the trial court's Findings and the adequacy of those Findings to support the trial court's Conclusion that Petitioner failed to meet his burden of proof to show Respondent had willfully abandoned Decedent. Petitioner's arguments are consistent with our standard of review.

A trial court's findings of fact following a bench trial have the force of a jury verdict and are conclusive on appeal if there is evidence to support them. *Browning v. Helff*, 136 N.C. App. 420, 423, 524 S.E.2d 95, 98 (2000). Appellate review of the trial court's conclusions of law is de novo. *Id.* "The labels 'findings of fact' and 'conclusions of law' employed by the lower tribunal in a written order do not determine the nature of our standard of review. If the lower tribunal labels as a finding of fact what is in substance a conclusion of law, we review that 'finding' as a conclusion de novo." *In re Estate of Sharpe*, 258 N.C. App. 601, 605, 814 S.E.2d 595, 598 (2018) (citing *Peters v. Pennington*, 210 N.C. App. 1, 15, 707 S.E.2d 724, 735 (2011)).

I.     Challenged Findings of Fact

Petitioner challenges Findings 5, 8, 9, 10, 11, and 13 as unsupported by competent evidence. Ultimately, Petitioner's arguments with respect to the trial court's factual findings amount to disagreements with the trial court's characterization of facts in evidence or are simply meritless. Nevertheless, we address each challenged Finding of Fact in turn. We do agree with Petitioner that Finding of Fact 13 is more properly deemed a Conclusion of Law and review it as such.

In Finding 5, the trial court found: "Decedent was taken from Respondent in July of 1994 by Petitioner when Decedent was two years old." However, Respondent's own testimony supports this Finding. Respondent testified numerous times during trial her son was "taken." Petitioner contends Decedent could not have been "taken" from Respondent because there was not a custody order in place. As such, Petitioner contends the parties had "equal rights to the child" and, therefore, he could not have "taken" the child from Respondent. However, the trial court made no finding Petitioner *illegally took* the child. Indeed, Respondent does not challenge the fact Petitioner took Decedent to a cookout on the weekend before 4 July 1994, from which Decedent was never brought back to Respondent. Further, Petitioner points to no evidence to show he ever returned or offered to return Decedent to Respondent or otherwise attempted to share custody of Decedent consistent with her "equal rights to the child." Thus, there is competent evidence in the Record to support Finding 5.

Finding 8 provides:

> Prior to this child support obligation taking effect, on the weekend preceding July 4, 1994, Petitioner took Decedent to a cookout when he was two years old and refused to return the child to Respondent and, as there was no custody order in place for the Decedent, the police refused to return Decedent to Respondent.

Petitioner contends only that the evidence does not support the portion of the Finding that the police refused to return Decedent because there was no custody order in place. This argument ignores his prior challenge to Finding 5 in which he expressly relied on the fact there was no custody order in place. Nevertheless, this portion of the trial court's finding is supported by Respondent's affidavit, which the trial court considered. Petitioner makes no argument on appeal that the affidavit should not have been considered by the trial court. N.C. R. App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned."). Moreover, Respondent testified at the hearing "I called the cops several times . . . . Most times they told me I had to – either me or him had to file custody and go from there." Finding 8 is, thus, quite clearly supported by evidence in the Record.

The same is true for Finding 9. Finding 9 provides "Respondent attempted to call the police and, on several occasions, went to Petitioner's parents' home to try and see the Decedent, and attempted to get help from the Mecklenburg County Self-help center, but never filed any custody papers." This Finding is amply supported by both Respondent's testimony and affidavit—including testimony she went to the home of Petitioner's father "quite a few times" to try and see her son but was denied access to him.

Petitioner's challenge to Finding 10 is likewise unavailing. Finding 10 states: "Respondent was attacked and threatened with bodily harm if she attempted to contact the Petitioner or the Decedent by acquaintances of Petitioner, including his girlfriend 'FiFi,' and Respondent filed a police report regarding an assault by 'FiFi' in January of 1995." This Finding is also supported by Respondent's affidavit and testimony that FiFi assaulted her and FiFi and Petitioner's sister had threatened her. It is also supported by the police report Respondent filed after the assault, which was admitted into evidence.

Finally, Petitioner also attempts to challenge Finding 11. In Finding 11, the trial court found: "Respondent made efforts to locate the Decedent during his childhood and found Decedent and Petitioner on one occasion in February of 2004 but was unable to establish a relationship with Decedent despite some effort to do so and Petitioner and Decedent moved away thereafter and did not tell Respondent where they were." Again, this Finding is more than sufficiently supported by evidence in the Record. Petitioner's own testimony detailed his frequent relocations without telling Respondent where he was moving. Both Respondent's affidavit and testimony detailed Respondent tracking down Decedent at the condominium complex and visiting with her son. Thereafter, Petitioner moved away and Respondent did not know where Petitioner was living. Respondent's testimony and affidavit also sets out her attempts to locate and contact Decedent. Thus, the trial court's factual findings are supported by evidence in the Record.

II. The Trial Court's Conclusion of Law

In Finding of Fact 13, the trial court concluded:

> The Court finds that Petitioner has not met its burden of proof by the greater weight of the evidence or by clear, cogent and convincing evidence that Respondent willfully intended to abandon the Decedent following the Decedent being taken from Respondent in July of 1994. Specifically, pursuant to *In re Estate of Lunsford*, 359 N.C. 382, 387, 610 S.E.2d 366, 370 (2005), Petitioner has not shown through the greater weight of the evidence that there was willful or intentional conduct on the part of the Respondent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child and thus Petitioner's Petition should be denied.

"Under the Intestate Succession Act, a parent may inherit from a deceased child if the child dies without a surviving spouse or lineal descendants." *In re Estate of Lunsford*, 359 N.C. 382, 386, 610 S.E.2d 366, 369 (2005) (citing N.C. Gen. Stat. § 29–15(3) (2003)). "If both parents survive the child under such circumstances, the child's estate is divided equally between them." *Id*. "Under N.C.G.S. § 31A–2, however, a parent who has 'wilfully (sic) abandoned the care and maintenance of his or her child' is barred from inheriting any portion of the child's estate unless the parent meets one of two statutory exceptions." *Id*. (citing N.C. Gen. Stat. § 31A–2). "Our wrongful death statute mandates that wrongful death proceeds be distributed 'as provided in the Intestate Succession Act,' and they are therefore subject to N.C.G.S. § 31A–2." *Id*. at 387, 610 S.E.2d at 369.

> For purposes of the Intestate Succession Act, parental abandonment has been defined as " 'wil[l]ful or intentional conduct on the part of the parent which evinces a settled purpose

- 10 -

> to forego all parental duties and relinquish all parental claims to the child.' " *McKinney v. Richitelli*, 357 N.C. 483, 489, 586 S.E.2d 258, 263 (2003) (quoting *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962)) (alteration in original). If a parent " 'withholds his presence, his love, his care, the opportunity to display filial affection, and wil[l]fully neglects to lend support and maintenance,' " such parent is deemed to have relinquished all parental claims and to have abandoned the child. *Id.* at 489–90, 586 S.E.2d at 263 (alteration in original) (quoting *Pratt*, 257 N.C. at 501, 126 S.E.2d at 608).

*Id.* at 387, 610 S.E.2d at 370.

> Abandonment has also been defined as " 'wil[l]ful neglect and refusal to perform the natural and legal obligations of parental care and support.' " [*McKinney*] at 489, 586 S.E.2d at 263 (alteration in original) (quoting *Pratt*, 257 N.C. at 501, 126 S.E.2d at 608). "Wilful intent is an integral part of abandonment and this is a question of fact to be determined from the evidence." *Pratt*, 257 N.C. at 501, 126 S.E.2d at 608.

*Id.*

In a bench trial, a trial court's "findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain a finding to the contrary." *Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968) (citations omitted). "The trial judge becomes both judge and juror, and it is [the judge's] duty to consider and weigh all the competent evidence before him." *Id.* The trial court "passes upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom." *Id.* "The trial court must itself determine what pertinent facts are actually established by the evidence before it, and it is not for an

appellate court to determine de novo the weight and credibility to be given to evidence disclosed by the record on appeal." *Coble v. Coble*, 300 N.C. 708, 712–13, 268 S.E.2d 185, 189 (1980) (citing *Knutton*, 273 N.C. 355, 160 S.E.2d 29, 1968). The weight or credibility to be given to the evidence is ultimately within the discretion of the trial court. *Phelps v. Phelps*, 337 N.C. 344, 357–58, 446 S.E.2d 17, 25 (1994).

In this case, the trial court—citing specifically to *Lunsford*—ultimately found: "Petitioner has not shown through the greater weight of the evidence that there was willful or intentional conduct on the part of the Respondent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child[.]" The trial court determined that given the weight of the evidence Petitioner simply had not met his evidentiary burden to show Respondent engaged in willful or intentional conduct with a settled purpose of foregoing her parental duties and claims to the child. The trial court was plainly acting within its discretion in affording more credibility and weight to Respondent's evidence. *Id.*

Moreover, the trial court's determination is supported by its evidentiary Findings of Fact. The trial court's evidentiary Findings of Fact demonstrate Petitioner took custody of Decedent and withheld him from Respondent for the rest of Decedent's life. Respondent made multiple attempts to find and visit with her son but was assaulted and threatened to stay away. When Respondent did locate Decedent, Petitioner moved away without telling Respondent. At the same time, the trial court found Respondent was raising four other children to adulthood while

working multiple jobs and on occasion experiencing homelessness.  The trial court was well within its discretion to conclude these facts did not support a determination Respondent had willfully abandoned Decedent.

Thus, the trial court's Findings of Fact support its ultimate determination that Petitioner failed to meet his burden to show Respondent had engaged in willful or intentional conduct with the purpose of foregoing her parental duties or claims. Therefore, the trial court's findings support the Conclusion Respondent had not willfully abandoned Decedent.  Consequently, the trial court did not err in denying the Petition.

## **Conclusion**

Accordingly, for the foregoing reasons, the trial court's Order denying Petitioner's Petition for Determination of Abandonment by Heir at Law is affirmed.

AFFIRMED.

Judges TYSON and CARPENTER concur.