MARIE A. CROSS AND SAMUEL A. SCUDDER, PLAINTIFFS v. CAPITAL TRANSACTION GROUP, INC., D/B/A CAPTRAN, AND WAYNE WALKER, DEFENDANTS

No. COA07-1519

(Filed 17 June 2008)

**1. Workers' Compensation— assignment of claims—assignment of proceeds and advance assignment also barred**

N.C.G.S. § 97-21 barred defendants' assertion of a lien on the proceeds of plaintiff's workers' compensation claim where defendant was the assignee of a company which invests capital in personal injury cases. The prohibition bars assignment of the proceeds, not just assignment of the Industrial Commission Form 18 claim, and the purposes of the Workers' Compensation Act are supported by the prohibition of advance assignment of workers' compensation benefits.

**2. Workers' Compensation— money advanced on claim— essentially a loan—defendant barred as creditor**

The essential character of money advanced on a workers' compensation claim was that of a loan, so that defendant was a creditor of plaintiff and could not assert a claim to her workers' compensation benefits. N.C.G.S. § 97-21.

Appeal by Plaintiffs from judgment entered 4 September 2007 by Judge R. Allen Baddour, Jr., in Wake County Superior Court. Heard in the Court of Appeals 20 May 2008.

*Scudder & Hedrick, PLLC, by Samuel A. Scudder and April D. Seguin, for Plaintiff-Appellants.*

*Wayne C. Walker, Pro Se, for Defendant-Appellee Wayne C. Walker.*

ARROWOOD, Judge.

Plaintiffs appeal an order declaring Defendant Wayne Walker to be the holder of a valid lien on $5,625.00 awarded to Plaintiff Cross in a settlement of her workers' compensation claim, and directing Plaintiff Scudder to disburse these funds to Walker. We reverse.

Plaintiffs are workers' compensation claimant, Marie Cross, and her attorney, Samuel Scudder. Defendants are Capital Transaction Group, Inc., d/b/a CapTran (CapTran), and Wayne Walker. CapTran "is a Nevada corporation engaged in the business of investing capital in personal injury cases." Defendant (Wayne Walker) is an assignee of CapTran's interest in the instruments at issue in this case.

In February 2002 Cross suffered a workplace injury for which she filed a workers' compensation claim. On 22 November 2002 Cross and CapTran executed a document titled "Transfer and Assignment of Proceeds and Security Agreement." Under the terms of this agreement, CapTran agreed to "advance $1500.00" to Plaintiff in return for "a portion of [Plaintiff's] future settlement and/or litigation proceeds" from her workers' compensation claim. The agreement, which obligated Plaintiff to repay CapTran the principal amount of $1500.00 and an additional "investment fee" of $1875.00, purported to grant CapTran a "security interest in the Proceeds of the Litigation for the original investment of $1500.00 plus [the investment fee amount]." The agreement also stated that if Plaintiff failed to obtain workers' compensation benefits, she would be excused from repaying CapTran.

On 23 December 2002 Cross and CapTran signed another agreement, identical to the first except for the dollar amounts involved. Pursuant to the second agreement, CapTran advanced Plaintiff another $1000.00, and obtained a "security interest" in that amount plus an additional $1250.00, again contingent on Plaintiff's receiving workers' compensation benefits. Under the terms of these contracts, Plaintiff then owed CapTran $2500.00, plus "investment fees" of $3125.00, for a total of $5625.00 of her workers' compensation proceeds.

In February 2006 Cross settled her workers' compensation claim. On 17 January 2007 Plaintiffs filed a Declaratory Judgment action against CapTran, seeking a declaration that CapTran did not have a lien on $5625.00 of Cross's workers' compensation benefits. Plaintiffs asserted that CapTran was barred from obtaining a lien on the proceeds of Cross's workers' compensation claim by N.C. Gen.

Stat. § 97-21 (2007). On 29 March 2007 Plaintiffs filed an amended complaint naming Wayne Walker as an additional defendant. In a series of assignments, Walker obtained CapTran's interest in the agreements signed by Cross and CapTran. Defendant CapTran was dismissed from the action, and is not a party to this appeal.

On 24 August 2007 the matter was heard by the trial court, and on 4 September 2007 the court entered an order declaring that Walker held a valid lien on $5625.00 of Cross's workers' compensation benefits, and ordering Scudder "to transfer the compensation proceeds in the amount of $5,625.00 to Defendant Walker." From this order Plaintiff timely appealed.

## Standard of Review

"The standard of review in declaratory judgment actions where the trial court decides questions of fact is whether the trial court's findings are supported by any competent evidence. Where the findings are supported by competent evidence, the trial court's findings of fact are conclusive on appeal." *Lineberger v. N.C. Dep't of Corr.*, 189 N.C. App. 1, 7, 657 S.E.2d 673, 678 (2008) (citations omitted). "However, the trial court's conclusions of law are reviewable *de novo.*" *Browning v. Helff*, 136 N.C. App. 420, 423, 524 S.E.2d 95, 98 (2000) (citations omitted).

---

Plaintiffs argue that the trial court erred by concluding that Defendant held a lien on Cross's workers' compensation benefits. At issue is the proper interpretation of N.C. Gen. Stat. § 97-21 (2007), "Claims unassignable and exempt from taxes and debts[,]" which provides in pertinent part:

> No claim for compensation under this Article shall be assignable, and all compensation and claims therefor shall be exempt from all claims of creditors and from taxes.

This appeal presents two questions: (1) does the prohibition in G.S. § 97-21 against assignment of a workers' compensation claim include a bar on the advance assignment of workers' compensation benefits? and (2) is Defendant a creditor of Plaintiff, and thus barred from asserting a claim to Plaintiff's workers' compensation proceeds? We answer both questions affirmatively, and conclude that (1) G.S. § 97-21 prohibits assignment of workers' compensation claims, benefits, or awards; and that (2) the transaction at issue was a loan and Defendant is a creditor of Plaintiff.

**[1]** We first consider the statutory provision that "[n]o claim for compensation under this Article shall be assignable[.]" Plaintiffs argue that "the plain language of the statute does not give rise to an interpretation differentiating a claim for compensation and the compensation arising from the claim." We agree.

"In resolving issues of statutory interpretation, we look first to the language of the statute itself." *Rhyne v. K-Mart Corp.*, 149 N.C. App. 672, 685, 562 S.E.2d 82, 92 (2002) (citing *Sara Lee Corp. v. Carter*, 351 N.C. 27, 519 S.E.2d 308 (1999)). As regards N.C. Gen. Stat. § 97-21, the statute's title states in part "Claims unassignable and exempt from taxes and debts[.]" (emphasis added). However, the statute addresses the bar on assignment of a workers' compensation "claim" separately from the exemption from creditors and taxes of "compensation and claims." The heading's use of the word "claims" to refer to both parts of the statute indicates that, for purposes of N.C. Gen. Stat. § 97-21, there is no functional difference between the "claim" and the "compensation."

The North Carolina Supreme Court also has used these terms interchangeably. In *Higgins v. Simmons*, 324 N.C. 100, 376 S.E.2d 449 (1989), the North Carolina Supreme Court discussed, in *dicta*, whether § 97-21 prohibited garnishment of a bank account that had been funded in part by proceeds from a workers' compensation claim. The Court stated that "the garnishee bank has no standing to enforce this right of its depositor under the Workers' Compensation Act" and explained:

> [T]he personal character of compensation payments has resulted in their being made nonassignable by statute[.] . . . Once the proceeds from a compensation claim have been deposited in a bank, they become indistinguishable from other funds on deposit.

*Higgins*, 324 N.C. at 103-04, 376 S.E.2d at 452 (emphasis added). Significantly, the Court stated that workers' compensation payments were not assignable.

Our conclusion, that G.S. § 97-21 prohibits assignment of a workers' compensation claim or of the proceeds of such a claim, is supported by the significant differences between an employee's statutory rights to workers' compensation benefits and an individual's common law rights in a personal injury or tort suit. For example, "the remedies sought in a workers' compensation claim and a tort claim are different, and . . . only tort claims, not workers' compensation claims, are

tried before a jury." *Brooks v. Paulk & Cope, Inc.*, 176 F. Supp. 2d 1270, 1276 (M.D. AL 2001) "There is no question that the Supreme Court agrees that benefits received on account of worker's compensation are different from damages awarded in connection with a tort claim." *In re Sanchez*, 362 B.R. 342, 349 (Bankr. W.D. MI. 2007). Thus, "[c]lassification of a claim as a worker's compensation claim, as opposed to a personal injury claim, produces very different results." *In re Gregoire*, 210 B.R. 432, 434 (Bankr. D.R.I. 1997). Indeed:

> [t]he distinction is not merely a procedural matter of bringing an action in the wrong forum. As amici point out, there are funda-mental differences between a claim for workers' compensation benefits and a lawsuit seeking civil damages. . . . [T]he purposes, remedies available, evidentiary burdens, and standards of proof employed in adjudicating within the two distinct systems are dif-ferent by legislative design.

*HDH Corp. v. Atlantic Charter Ins. Co.*, 425 Mass. 433, 437-38, 681 N.E.2d 847, 851 (1997). In North Carolina:

> "By statute the Superior Court is divested of original jurisdiction of all actions which come within the provisions of the Workmen's Compensation Act." The Act provides that its remedies shall be an employee's only remedies against his or her employer for claims covered by the Act. N.C.G.S. § 97-10.1 [(2007)]. Remedies available at common law are specifically excluded.

*Lemmerman v. A.T. Williams Oil Co.*, 318 N.C. 577, 579, 350 S.E.2d 83, 85 (1986) (quoting *Morse v. Curtis*, 276 N.C. 371, 375, 172 S.E.2d 495, 498 (1970)).

"The workers' compensation system is a creature of statute enacted by the General Assembly and is codified in Chapter 97 of the North Carolina General Statutes." *Frost v. Salter Path Fire & Rescue*, 361 N.C. 181, 184, 639 S.E.2d 429, 432 (2007). The Workers' Com-pensation Act provides that an employee is entitled to compensa-tion for certain occupational diseases or for an "injury by accident arising out of and in the course of the employment[.]" N.C. Gen. Stat. § 97-2(6) (2007). "The term 'compensation' means the money allowance payable to an employee" pursuant to statute, N.C. Gen. Stat. § 97-2(11) (2007), and includes both disability and medical com-pensation. Disability is the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment[,]" N.C. Gen. Stat. § 97-2(9) (2007),

CROSS v. CAPITAL TRANSACTION GRP., INC.

[191 N.C. App. 115 (2008)]

and disability compensation generally consists of the payment of approximately two-thirds of his salary for a certain period of time. *See* N.C. Gen. Stat. § 97-29 (2007) and G.S. § 97-31 (2007). "Medical compensation" is the "medical, surgical, hospital, nursing, and rehabilitative services, and medicines . . . and other treatment . . . as may reasonably be required to effect a cure or give relief[.]" N.C. Gen. Stat. § 97-2(19) (2007).

An injured employee is not required to prove negligence on the part of his employer to qualify for workers' compensation benefits; however, workers' compensation benefits "exclude all other rights and remedies of the employee. . . against the employer at common law or otherwise[.]" N.C. Gen. Stat. § 97-10.1 (2007). Thus:

> As this Court has often discussed, the North Carolina Workers' Compensation Act was created to ensure that injured employees receive sure and certain recovery for their work-related injuries without having to prove negligence on the part of the employer or defend against charges of contributory negligence. In exchange for these "limited but assured benefits," the employee is generally barred from suing the employer for potentially larger damages in civil negligence actions and is instead limited exclusively to those remedies set forth in the Act.

*Whitaker v. Town of Scotland Neck*, 357 N.C. 552, 556, 597 S.E.2d 665, 667 (2003) (quoting *Pleasant v. Johnson*, 312 N.C. 710, 712, 325 S.E.2d 244, 246-47 (1985)) (citation omitted).

"In ascertaining legislative intent, we are guided by the language of the statute, the spirit of the act, and what the statute seeks to accomplish. . . . The Workers' Compensation Act is designed to relieve against hardship. To that end, one of its primary purposes is to provide a swift and certain remedy to injured workers without the necessity of protracted litigation." *Foster v. Western-Electric Co.*, 320 N.C. 113, 116, 357 S.E.2d 670, 672-73 (1987) (citations omitted). We conclude that the purposes of the Workers' Compensation Act are supported by the prohibition against advance assignment of workers' compensation benefits.

Defendant argues that, because G.S. § 97-21 does not specify that the unassignability of workers' compensation claims applies to compensation awarded to a claimant, we should infer that workers' compensation benefits may be assigned. Defendant directs our attention to the common law distinction in personal injury claims between

assignment of claims and compensation for claims, and urges us to apply this distinction to assignment of workers' compensation claims. Defendant fails to articulate a rationale for importing this common law distinction into workers' compensation law, and we find none. Moreover, workers' compensation is a creature of statute, and there is a statute expressing a clear intent to bar assignment of workers' compensation benefits. In contrast, there is no analogous statute barring assignment of personal injury compensation.

We conclude that the prohibition in G.S. § 97-21 against assignment of a workers' compensation claim refers, not just to assignment of the Industrial Commission Form 18 "claim" filed by a workers' compensation claimant, but also bars assignment of the proceeds of such a claim.

[2] We next consider the second part of the statute which states that "all compensation and claims therefor shall be exempt from all claims of creditors[.]" G.S. § 97-21.

A "creditor" is defined in pertinent part in BLACK'S LAW DICTIONARY 396 (8th ed. 2004) as "(1) One to whom a debt is owed." "A debt is something due from one person, the debtor, to another called the creditor, and may be created by simple contract or evidenced by specialty or judgment according to the nature of the obligation giving rise to it." *Summit Silk Co. v. Kinston Spinning Co.*, 154 N.C. 421, 428-29, 70 S.E. 820, 823 (1911).

In the instant case, Defendant claims a lien on the proceeds of Plaintiff Cross's workers' compensation benefits, on the grounds that the terms of their agreement require Cross to repay him for the funds that Defendant advanced to Cross, as well as an additional "investment fee." We conclude that the transaction was a loan and that Defendant is a creditor of Plaintiff. As a creditor, Defendant cannot attach a lien on Plaintiff's workers' compensation benefits or compensation.

Defendant, however, argues that he is not a creditor, on the grounds that transaction was a "sale" not a loan. We disagree. "A loan is 'made upon the delivery by one party and the receipt by the other party of a given sum of money, an agreement, express or implied, to repay the sum lent, with or without interest.' . . . '[C]ourts of this state regard the substance of a transaction, rather than its outward appearance, as controlling.'" *State ex. rel. Cooper v. NCCS Loans, Inc.*, 174 N.C. App. 630, 634, 624 S.E.2d 371, 374 (2005) (quoting *Kessing v.*

*Mortgage Corp.*, 278 N.C. 523, 529, 180 S.E.2d 823, 827 (1971); and *Auto Supply v. Vick*, 303 N.C. 30, 37, 277 S.E.2d 360, 366 (1981)). In *Cooper* usurious "pay day loans" were disguised as contracts for the sale of Internet service. This Court concluded that the contracts were a sham:

> To review, in return for immediate cash, Advance Internet cus-
> tomers must repay both the sum advanced and an additional fee
> of at least 20% of the amount of cash received. . . . We conclude
> that, notwithstanding the facial resemblance to Internet service
> contracts, it is transparently obvious that defendants are offering
> loans, not *bona fide* internet service contracts.

*Cooper*, 174 N.C. App. at 638, 624 S.E.2d at 377. Similarly, in return for immediate cash, Cross signed an agreement obligating her to "both the sum advanced and an additional fee of [125%] of the amount of cash received." We conclude that this transaction constituted a loan, notwithstanding it's facial disguise as the "sale" of proceeds of work-ers' compensation "litigation." " 'Where a transaction is in reality a loan of money, whatever may be its form, . . . [t]he law considers the substance and not the mere form or outward appearance of the trans-action in order to determine what it in reality is.' " *Kessing*, 278 N.C. at 531, 180 S.E.2d at 828 (quoting *Ripple v. Mortgage Corp.*, 193 N.C. 422, 424, 137 S.E. 156, 158 (1927)).

Moreover, the character of a transaction is not automatically changed by the inclusion of a condition under which repayment would be forgiven. "[I]t makes no difference in the result, if we con-strue the agreement as requiring repayment by the Texas corpora-tions only in the event that their operations should prove successful. A loan is no less a loan because its repayment is made contingent[.]" *Island Petroleum Co. v. Commissioner*, 57 F.2d 992, 994 (4th Cir. 1932). "Neither is the term 'investment' in any way contradictory of a 'loan.' The word 'advance' in the connotation here used, commonly means a loan of money." *Whittemore Homes, Inc. v. Fleishman*, 190 Cal. App. 2d 554, 558, 12 Cal. Rptr. 235, 236 (1961) (citations omitted).

In the instant case, the parties' agreement provided that (1) Defendant would advance funds to Plaintiff; and (2) upon receipt of workers' compensation benefits, Plaintiff would repay the amount advanced and an additional "investment fee." We conclude that the essential character of this transaction was a loan. Accordingly, Defendant was a creditor of Plaintiff, and could not assert a claim to her workers' compensation benefits.

CROSS v. CAPITAL TRANSACTION GRP., INC.

[191 N.C. App. 115 (2008)]

We agree with Plaintiffs that the North Carolina cases allowing certain parties to reach workers' compensation benefits are easily distinguished from this case. In *State v. Miller*, 77 N.C. App. 436, 335 S.E.2d 187 (1985), this Court held that the exemption of workers' compensation benefits from the claims of creditors did not apply to an order for child support. The Court held that the "obligation to support one's children is not a 'debt' in the legal sense of the word[, and] . . . helping to sustain the dependants of employees disabled on the job is one of the main purposes of our Workers' Compensation Act." *Id.* at 438-39, 335 S.E.2d at 188-89. The instant case does not implicate child support law.

In *Sara Lee Corp. v. Carter*, 351 N.C. 27, 35, 519 S.E.2d 308, 313 (1999), "overwhelming evidence presented at trial led the trial court to conclude, *inter alia*, that defendant engaged in fraud, breach of fiduciary duty, and unfair and deceptive acts or practices. The trial court then ordered that 'a constructive trust for the benefit of [plaintiff] is hereby imposed over any and all workers['] compensation benefits that [defendant] is or shall be entitled to receive[.]' " On appeal, the defendant argued that G.S. § 97-21 barred the trial court's imposition of a constructive trust. The North Carolina Supreme Court disagreed, holding that the statutory language "does not preclude the trial court from imposing the equitable remedy of a constructive trust . . . under this extraordinary and unique set of facts[.]" *Id.* at 35-36, 516 S.E.2d at 313-14. The holding in *Sara Lee* was based on the "extraordinary and unique" facts of that case, and upheld the trial court's imposition of the equitable remedy of a constructive trust, not a claimant's advance assignment of workers' compensation benefits.

For the reasons discussed above, we conclude that G.S. § 97-21 bars Defendant's assertion of a lien on the proceeds of Plaintiff's workers' compensation claim, and that the trial court's order must be

Reversed.

Judges HUNTER and ELMORE concur.