IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-1044

Filed 6 February 2024

Mecklenburg County, No. 19 CVS 10214

RICHARD C. HANSON, FRED ALLEN, RICHARD BURGESS, VERNON L. CATHCART, ANGIE CATHCART, CHRISTOPHER L. DAVIS, JAMES J. FLOWERS, KENNETH C. LYNCH, LARRY F. MATKINS, THOMAS RODDEY, DARYL STURDIVANT, ALVESTER W. TUCKER AND CARLOS VALENTIN, Plaintiffs,

v.

CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, Defendant.

Appeal by Plaintiffs from Order entered 30 June 2022 by Judge Casey Viser in Mecklenburg County Superior Court. Heard in the Court of Appeals 9 August 2023.

*Tin Fulton Walker & Owen, P.L.L.C., by John W. Gresham, for Plaintiffs-Appellants.*

*Wallace Law Firm PLLC, by Terry L. Wallace, for Defendant-Appellee.*

HAMPSON, Judge.

**Factual and Procedural Background**

Richard C. Hanson, Fred Allen, Richard Burgess, Vernon L. Cathcart (Cathcart), Angi Cathcart, Christopher L. Davis, James J. Flowers, Kenneth C. Lynch, Larry F. Matkins, Thomas Roddey, Alvester W. Tucker, and Carlos Valentin (collectively, Plaintiffs) appeal from an Order on Complaint for Declaratory Judgment

(Declaratory Judgment).[1]  The Declaratory Judgment declared: (1) Plaintiffs ineligible for contributions by Charlotte-Mecklenburg Board of Education (Defendant) under the Supplemental Retirement Income Plan for Local Government Law-Enforcement Officers pursuant to N.C. Gen. Stat. § 143-166.50; and (2) Cathcart ineligible for the Special Separation Allowance for law-enforcement officers employed by local government employers under N.C. Gen. Stat. § 143-166.42.  The Record before us—including facts stipulated to by the parties—reflects the following:

On 10 June 2009, the North Carolina General Assembly enacted a Local Act entitled "AN ACT TO ALLOW THE CHARLOTTE-MECKLENBURG BOARD OF EDUCATION TO MAINTAIN A CAMPUS POLICE AGENCY."  2009 N.C. Sess. Law 73.  This Local Act, applicable only to Defendant, amended Chapter 115C by adding section 147.1.  2009 N.C. Sess. Law 73, § 2.  This Act—applicable only to Defendant—provides:

> A local board of education may establish a campus law enforcement agency and employ campus police officers. These officers shall meet the requirements of Chapter 17C of the General Statutes, shall take the oath of office prescribed by Article VI, Section 7 of the Constitution, and shall have all the powers of law enforcement officers generally.

*Id.*[2]

---

[1] Plaintiff Daryl Sturdivant filed a Voluntary Dismissal without Prejudice on 2 June 2021.

[2] Frustratingly, the text of this Local Act appears nowhere in the Record and neither party includes the text of this Act in their briefing or as an Appendix to the parties' briefing.  While we acknowledge the Local Act is not the statute requiring interpretation in this case, it quite obviously provides crucial

Under the authorization provided by Section 115C-147.1, Defendant established a campus law-enforcement agency staffed by campus police officers. Plaintiffs all are or were sworn law-enforcement officers who are or were employed by Defendant as campus police officers. In particular, Cathcart retired from employment with Defendant on 30 September 2016.

On 21 May 2019, Plaintiffs filed a Complaint in Mecklenburg County Superior Court. The Complaint alleged that Plaintiffs, as sworn law-enforcement officers employed or retired from employment by Defendant, were entitled to certain retirement contributions and benefits for law-enforcement officers employed by local government employers. Specifically, the Complaint alleged Defendants were required to contribute amounts equal to 5% of the Plaintiffs' monthly compensation to the Supplemental Retirement Income Plan provided for by N.C. Gen. Stat. § 143-166.50(e) and, separately, that Cathcart—a retired officer—was entitled to a Special Separation Allowance provided for by N.C. Gen. Stat. § 143-166.42. The Complaint sought declaratory relief that Plaintiffs were entitled to these benefits and Defendant was required to pay the amounts due. The Complaint further sought a declaration Defendant was required to pay these benefits going forward.

---

context. We take this opportunity to urge compliance with N.C.R. App. P. 28(d)(1)(c) requiring an appellant to reproduce as an appendix to its brief: "relevant portions of statutes, rules, or regulations, the study of which is required to determine issues presented in the brief[.]" N.C.R. App. P. 28(d)(1)(c). Indeed, it would have been helpful for the parties to append *any* of the relevant statutes to their briefing in this case.

Defendant filed an Answer to the Complaint on 15 November 2019. The Answer alleged Plaintiffs do not meet the statutory criteria to receive the additional benefits. The Answer also included an affirmative defense Plaintiffs' claims were otherwise barred by any applicable statute of limitations.

The trial court heard the matter on 11 June 2021. The parties submitted three questions for determination by the trial court based on a series of stipulated facts:

> 1) Whether the Defendant is Required to Pay Plaintiff Vernon Cathcart a Special Separation Allowance Under N.C. Gen. Stat. § 143-166.42?
>
> 2) Whether Defendant is Required to Pay Plaintiffs a 5% contribution into the Supplemental Retirement Income Plan as Set Forth in N.C. Gen. Stat. § 143-166.50(e)?
>
> 3) Does the Statute of Limitations Apply to bar or limit Plaintiffs' claims?

The trial court entered its Order on Complaint for Declaratory Judgment on 30 June 2022. The trial court concluded, in relevant part, Defendant is not a "county, nor is it a city, or town or 'other political subdivision of the State.' " Based on this conclusion, the trial court reasoned Defendant was not an Employer as that term is defined in N.C. Gen. Stat. § 143-166.50. The trial court further concluded Plaintiffs were not members of the Local Government Employees' Retirement System (LGERS). The trial court also concluded its review of legislative history indicated "it was the intent of the legislature to specifically exclude law enforcement officers employed by a county board of education" from LGERS benefits.

Based on its conclusions, the trial court declared Defendant is not required to pay Cathcart the Special Separation Allowance or pay Plaintiffs the 5% contribution to the Supplemental Retirement Income Plan. Because of these rulings, the trial court determined Defendant's statute of limitations argument was moot. On 28 July 2022, Plaintiffs timely filed Notice of Appeal.

## Issues

The dispositive issues on appeal are whether the trial court erred in declaring: (I) Plaintiffs are not eligible for the Supplemental Retirement Income Plan; and (II) Cathcart is not eligible for the Special Separation Allowance.

## Analysis

" 'The standard of review in declaratory judgment actions where the trial court decides questions of fact is whether the trial court's findings are supported by any competent evidence. Where the findings are supported by competent evidence, the trial court's findings of fact are conclusive on appeal.' " *Nelson v. Bennett*, 204 N.C. App. 467, 470, 694 S.E.2d 771, 774 (2010) (quoting *Cross v. Capital Transaction Grp., Inc.*, 191 N.C. App. 115, 117, 661 S.E.2d 778, 780 (2008)). " 'However, the trial court's conclusions of law are reviewable *de novo*.' " *Id.* Here, because there are no factual disputes between the parties, the ultimate issues relate solely to the trial court's conclusions of law construing the applicable statutes. *See id.*

I.     Supplemental Retirement Income Plan

Plaintiffs contend the trial court erred in declaring they are not entitled to the Supplemental Retirement Income Plan under N.C. Gen. Stat. § 143-166.50(e). Defendant contends Plaintiffs are not entitled to this benefit because, consistent with the trial court's conclusions, it is not an employer as contemplated by the statute as Plaintiffs should not be deemed law-enforcement employees of "a county, city, town or other political subdivision of the State." Defendant further asserts Plaintiffs are not members of LGERS and, thus, are not eligible for the benefits thereunder.

"In resolving issues of statutory interpretation, we look first to the language of the statute itself." *Rhyne v. K-Mart Corp.*, 149 N.C. App. 672, 685, 562 S.E.2d 82, 92 (2002). N.C. Gen. Stat. § 143-166.50(e) provides, in relevant part:

> (e) Supplemental Retirement Income Plan for Local Governmental Law-Enforcement Officers. – As of January 1, 1986, *all law-enforcement officers employed by a local government employer, are participating members of the Supplemental Retirement Income Plan as provided by Article 5 of Chapter 135 of the General Statutes*. In addition to the contributions transferred from the Law-Enforcement Officers' Retirement System, participants may make voluntary contributions to the Supplemental Retirement Income Plan to be credited to the designated individual accounts of participants. From July 1, 1987, until July 1, 1988, local government employers of law enforcement officers shall contribute an amount equal to at least two percent (2%) of participating local officers' monthly compensation to the Supplemental Retirement Income Plan to be credited to the designated individual accounts of participating local officers; and *on and after July 1, 1988, local government employers of law enforcement officers shall contribute an amount equal to five percent (5%) of participating local officers' monthly compensation to the Supplemental Retirement Income Plan to be credited to the designated individual accounts of participating local officers*.

N.C. Gen. Stat. § 143-166.50(e) (2021) (emphasis added). The definitional sub-section of Section 143-166.50 defines employer: " 'Employer' means a county, city, town or other political subdivision of the State." N.C. Gen. Stat. § 143-166.50(a)(2) (2021). Relevant to this case, " 'Law-enforcement officer' means a full-time paid employee of an employer, who possesses the power of arrest, who has taken the law enforcement oath administered under the authority of the State as prescribed by G.S. 11-11, and who is certified as a law enforcement officer under the provisions of Article 1 of Chapter 17C of the General Statutes or certified as a deputy sheriff under the provisions of Chapter 17E of the General Statutes." N.C. Gen. Stat. § 143-166.50(a)(3).[3]

## A. *Political Subdivision*

Under the North Carolina Constitution, the General Assembly is required to provide for a general and uniform system of public schools. N.C. Const. art. IX, § 2. The General Assembly has sought to meet this constitutional obligation to provide a general and uniform system of schools through enactment of Chapter 115C of the General Statutes. *See* N.C. Gen. Stat. § 115C-1 (2021) (General and Uniform System of Schools). As part of this system, the General Assembly has constituted elected county boards of education. N.C. Gen. Stat. § 115C-35. County boards of education

---

[3] Defendant does not contest that Plaintiffs are or were sworn law-enforcement officers. The argument centers solely on whether Defendant itself should be deemed a local government employer for purposes of application of the retirement benefit statutes at issue.

are bodies corporate and "subject to any paramount powers vested by law in the State Board of Education or any other authorized agency shall have general control and supervision of all matters pertaining to the public schools in their respective local school administrative units; they shall execute the school laws in their units . . . ." N.C. Gen. Stat. § 115C-40. Under Section 115C-5, a local school administrative unit is defined as "a subdivision of the public school system which is governed by a local board of education." N.C. Gen. Stat. § 115C-5(6) (2021). By way of illustration, Black's Law Dictionary defines "Political Subdivision" as "[a] division of a state that exists primarily to discharge some function of local government." *Black's Law Dictionary* (11th ed. 2019).

Indeed, our Courts have historically recognized local Boards of Education to be political subdivisions of the State. In 1948, our Supreme Court observed: "The Board of Trustees of the Kinston Graded Schools is a body politic and corporate charged with the public duty of providing an adequate public school system for children residing in the Kinston Graded School District, *a political subdivision of the State.*" *Boney v. Bd. of Trs. of Kinston Graded Schs.*, 229 N.C. 136, 137, 48 S.E.2d 56, 57 (1948) (emphasis added).[4] Later, in 1979, the Supreme Court observed a plaintiff employed by the Surry County Board of Education "was employed by a political subdivision of the state[.]" *Presnell v. Pell*, 298 N.C. 715, 724, 260 S.E.2d 611, 616

---

[4] Obviously, this case was decided prior to the adoption of the 1969 State Constitution or the enactment of Chapter 115C of the General Statutes.

(1979). In *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, this Court determined the Rowan County Board of Education was a political subdivision of the State engaged in "a governmental function exercised in pursuit of a sovereign purpose for the public good on behalf of the State." 87 N.C. App. 106, 115, 359 S.E.2d 814, 819 (1987) (citations omitted). More recently, this Court has expressly held: "the [local boards of education], like the counties themselves, are mere subdivisions of the State." *Silver v. Halifax Cnty. Bd. of Comm'rs*, 255 N.C. App. 559, 584, 805 S.E.2d 320, 337 (2017), *aff'd*, 371 N.C. 855, 821 S.E.2d 755 (2018); *see also Moore v. Bd. of Educ. of Iredell Cnty.*, 212 N.C. 499, 502, 193 S.E. 732, 733-34 (1937) ("It is in the exercise of such power that the Legislature alone can create, directly or indirectly, counties, townships, *school districts*, road districts, and *the like subdivisions*, and invest them, and agencies in them, with powers corporate or otherwise in their nature, to effectuate the purposes of the government, whether these be local or general, or both." (emphasis added)); *Branch v. Bd. of Educ. of Robeson Cnty.*, 233 N.C. 623, 626, 65 S.E.2d 124, 126 (1951) (Plaintiffs could not bring a suit on behalf of school administrative units as taxpayers on behalf of a public agency or political subdivision); *Thomas Jefferson Classical Acad. Charter Sch. v. Cleveland Cnty. Bd. of Educ.*, 236 N.C. App. 207, 215, 763 S.E.2d 288, 295 (2014) ("Local school boards and local school administrative units are local governmental units, and, as such, are not 'agencies' for the purpose of the [Administrative Procedure Act].").

Thus, Defendant—a county board of education—is a political subdivision of the State. Therefore, Defendant falls under the definition of employer provided in N.C. Gen. Stat. § 143-166.50(a)(2). Consequently, the trial court erred in concluding Plaintiffs were not law-enforcement officers employed by a local government employer under N.C. Gen. Stat. § 143-166.50(e).

B.      *Membership in LGERS*

Defendant further contends, however, that Plaintiffs are nevertheless not eligible for the Supplemental Retirement Income Plan because they are members of the Teachers' and State Employees' Retirement Plan (TSERS) and not LGERS. Specifically, Defendant points to N.C. Gen. Stat. § 143-166.50(b) which provides:

> (b) Basic Retirement System. – On or after January 1, 1986, law-enforcement officers employed by an employer shall be members of the Local Government Employees' Retirement System, and beneficiaries who were last employed as officers by an employer, or who are surviving beneficiaries of officers last employed by an employer, are beneficiaries of the Local Governmental Employees' Retirement System and paid in benefit amounts then in effect. All members of the Law-Enforcement Officers' Retirement System last employed and paid by an employer are members of the Local Retirement System.

N.C. Gen. Stat. § 143-166.50(b) (2021). Defendant argues this provision means only law-enforcement members of LGERS are eligible for the supplemental benefits provided under subsection (e). Plaintiffs, however, make no argument that they are entitled to the basic benefits provided by LGERS under subsection (b). That broader

question of whether Plaintiffs are properly enrolled in TSERS rather than LGERS is simply not before us in this case.

Further, the plain language of subsection (e) contains no language limiting the supplemental benefits to only LGERS members. To the contrary, its plain language unequivocally provides: "As of January 1, 1986, all law-enforcement officers employed by a local government employer, are participating members of the Supplemental Retirement Income Plan as provided by Article 5 of Chapter 135 of the General Statutes." N.C. Gen. Stat. § 143-166.50(e). As such, Plaintiffs—law-enforcement officers—employed by Defendant—a local government employer—are participating members in the Supplemental Retirement Income Plan provided for by Article 5 of Chapter 135 of the General Statutes.

Thus, the trial court erred in concluding Plaintiffs are not employees of an employer under Section 143-166.50(e) or eligible for supplemental benefits as non-members of LGERS. Therefore, Plaintiffs are eligible for the Supplemental Retirement Income Plan provided for under Section 143-166.50(e), and Defendant is required to pay the 5% contribution under the statute. Consequently, we reverse the portion of the trial court's Order declaring Defendant is not required to pay Plaintiffs the 5% contribution to the Supplemental Retirement Income Plan.

II. Special Separation Allowance

Plaintiffs further contend the trial court erred by declaring Cathcart ineligible to receive the Special Separation Allowance provided for under N.C. Gen. Stat. § 143-166.42. Section 143-166.42 provides in relevant part:

> (a) On and after January 1, 1987, every sworn law enforcement officer as defined by G.S. 128-21(11d) or G.S. 143-166.50(a)(3) employed by a local government employer who qualifies under this section shall receive, beginning in the month in which the officer retires on a basic service retirement under the provisions of G.S. 128-27(a), an annual separation allowance equal to eighty-five hundredths percent (0.85%) of the annual equivalent of the base rate of compensation most recently applicable to the officer for each year of creditable service.

N.C. Gen. Stat. § 143-166.42(a) (2021).

Defendant again contends Cathcart was not employed by a local government employer. Section 143-166.42(a) provides two separate definitions of law-enforcement officer through N.C. Gen. Stat. § 128-21(11d) or N.C. Gen. Stat. § 143-166.50(a)(3). *Id.* As discussed above Plaintiffs—including Cathcart—meet the definition of a law-enforcement officer under Section 143-166.50(a)(3). Therefore, Defendant's argument on this point fails.

However, Section 143-166.42 contains an additional requirement that the Special Separation Allowance is payable "beginning in the month in which the officer retires on a basic service retirement under the provisions of G.S. 128-27(a)[.]" *Id.* Section 128-27(a) governs the service retirement benefits under LGERS.[5] *See* N.C.

---

[5] Article 3 of Chapter 128 is entitled: "Retirement System for Counties, Cities, and Towns."

Gen. Stat. § 128-27(a) (2021). Here, unlike the Supplemental Retirement Income Plan, the Special Separation Allowance is expressly premised on membership in—and upon retirement from—LGERS.

Here, there is nothing in the Record to indicate Cathcart retired under the provisions of Section 128-27(a). The parties stipulated to the fact Cathcart, instead, retired under TSERS. *See* N.C. Gen. Stat. § 135-1, *et seq.* In briefing to this Court, Plaintiffs fail to even address this additional requirement under Section 143-166.42.

Thus, on the Record before us, Cathcart did not retire under the provisions of LGERS. Therefore, we are compelled to agree with the trial court Cathcart is not entitled to the Special Separation Allowance provided for under Section 143-166.42. Consequently, we affirm the portion of the trial court's Order declaring Defendant is not required to pay Cathcart the Special Separation Allowance. In so concluding, we do note the definition of employer under LGERS provides a mechanism for its scope to be expanded to other political subdivisions of the State beyond those enumerated in the statute. Section 128-21(11) defines employer as meaning:

> any county, incorporated city or town, the board of alcoholic control of any county or incorporated city or town, the North Carolina League of Municipalities, and the State Association of County Commissioners. *"Employer" shall also mean any separate, juristic political subdivision of the State as may be approved by the Board of Trustees upon the advice of the Attorney General.*

N.C. Gen. Stat. § 128-21(11) (2021) (emphasis added).

## **Conclusion**

Accordingly, for the foregoing reasons, we reverse that portion of the trial court's Order which declared Plaintiffs ineligible for the Supplemental Retirement Income Plan contribution. We affirm the portion of the trial court's Order declaring Cathcart is not entitled to the Special Separation Allowance. We remand this case to the trial court for implementation of our decision and to address any remaining issues raised by the pleadings—including whether Plaintiffs' claims are barred in whole or in part by any applicable statute of limitations.[6]

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Judges MURPHY and WOOD concur.

---

[6] Based on our resolution of this matter on statutory grounds, we do not reach the remaining issue raised on appeal by Plaintiffs related to the exclusion of a letter from the Assistant General Counsel to the Retirement Systems Division. On remand, if relevant or necessary, the trial court may in its discretion revisit its ruling on that matter.