IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-730

Filed 3 June 2026

Mecklenburg County, No. 21CVS015506-590

DAEDALUS, LLC, Plaintiff,

v.

MECKLENBURG COUNTY, Defendant/Third-Party Plaintiff,

v.

JASON MURPHY and DAEDALUS REALTY, LLC, Third-Party Defendants.

Appeal by plaintiff from judgment entered 31 January 2025 by Judge Donnie Hoover in Mecklenburg County Superior Court. Heard in the Court of Appeals 15 April 2026.

> *TLG Law, by David G. Redding, Tyler A. Rhoades, and Benjamin J. Axelman, for plaintiff-appellant Daedalus, LLC.*

> *Ronald L. Gibson, for defendant/third-party plaintiff Mecklenburg County.*

> *Gardner Skelton, PLLC, by Preston O. Odom, III, and James, McElroy & Diehl, P.A., by John R. Buric for the intervenors Heather Brennan, Adam Olszak, Chris Osborn, Wendy Osborn, Henry Stepp, Hillary Stepp, Laura Dyches, and Austin Dyches.*

TYSON, Judge.

Daedalus, LLC ("Plaintiff"), Daedalus Realty, LLC, and Jason Murphy ("Third-Party Defendants)(collectively "Plaintiffs") appeal from a declaratory judgment

entered in favor of Mecklenburg County ("Defendant") and the issuance and award of damages for intervenors: Heather Brennan, Adam Olszak, Chris Osborn, Wendy Osborn, Henry Stepp, Hillary Stepp, Laura Dyches, Austin Dyches, and other non-party owners (collectively "Owners"). We affirm in part, reverse in part, and remand.

## I.    Background

During 2016 and 2017, Plaintiff acquired two properties located in Mecklenburg County. Around the same time, BBT Series XVI, LLC ("BBT"), a Texas limited liability company, acquired three nearby properties in the same county.

Plaintiff and BBT entered into an agreement under which Plaintiff would construct five duplexes, one on each property. Plaintiff would then subdivide each property into two separate lots at the common divider wall, thereby ensuring each half of the duplex would be situated upon its own individual lot. Plaintiff would possess ten lots, each containing a half-duplex, intended for sale to separate prospective buyers.

An architect prepared the design plans for the duplexes. *Id.* The design plans did not present or convey Plaintiff's intention to subdivide each property into two lots. Plaintiff submitted the plans to the County's Code Enforcement Department ("CED"). Following CED's approval, Plaintiff constructed the duplexes in accordance with the approved plans. CED inspected, approved, and issued a certificate of occupancy ("CO") for each duplex dwelling unit. *Id.*

Plaintiff hired a surveyor to prepare a plat and subdivided each of the five properties into two lots, resulting in a total of ten lots, in contrast to the five lots specified in the design plans submitted to and approved by the County. The subdivision maps received approval from the Charlotte Planning Commission and the County plat review officer and were duly recorded with the County's Register of Deeds. In 2018, the Third-Party Defendants sold the dwelling units to the Owners.

In 2019, the County recognized Plaintiff had subdivided the lots without submitting the proposed modifications to the County for approval. These modifications purportedly caused an issue with the classification of the structures. The structures were permitted for and intended to be duplexes; however, the County contends the 2012 Residential Code classifies the subdivided structures as townhouses. The 2012 Residential Code defines a townhouse as "a single-family dwelling unit constructed *in a row* of attached units, *separated by property lines*." Residential Code, § R202 (2012) (emphasis added).

The 2012 Building Code, the 2018 Building Code, and the 2018 later Building Code all classify townhouses as "a single-family dwelling unit constructed in *a group of three or more* attached units *separated by property lines*." Building Code, § 202 (2012); Building Code, § 202 (2018); Residential Code, § R202 (2018) (emphasis added). The 2018 Building and Residential Codes did not come into effect until 1 January 2019, and each of the Plaintiff's buildings was approved in 2017 and 2018. Building Code, § R101.1 (2018). The 2024 update to the Residential Code ("2024

Residential Code") reclassified a townhouse as "a single-family dwelling unit constructed in a group of two or more attached units separated by property lines." Residential Code, § R202 (2024). The 2024 edition of the Residential Code did not become effective until January 1, 2025. *Id.*

Under both versions of the 2012 and 2018 Building Codes, townhouses are mandated to have a two-hour rated firewall separating the units, whereas duplexes are only required to have a one-hour rated firewall. The Plaintiff's buildings were separated by a one-hour rated firewall. As a result, the County issued Stop Work Orders ("SWO") and Notices of Violation ("NOV"), as well as correspondence to the Owners, indicating the County's intent to revoke their certificates of occupancy ("CO").

Due to the COVID-19 pandemic, the County did not immediately proceed with its threat to revoke the CO. Nevertheless, the Owners expressed concern they might encounter difficulties in reselling the properties due to the imminent threat of losing their COs. Consequently, Plaintiff initiated a legal action for a declaratory judgment against the County on 4 October 2021, requesting a declaration: (1) the Properties are not classified as townhouses under the applicable Codes and are therefore in compliance; and, (2) the County lacks the legal authority to revoke the COs.

On 3 December 2021, the County filed an Answer requesting a declaratory judgment, asserting Counterclaims and asserting a Third-Party Complaint against the Third-Party Defendants pursuant to the North Carolina Declaratory Judgment

Act, N.C. Gen. Stat. §§ 1-253 *et seq.* (2025) (the "DJA"). The County sought to obtain judicial declarations the Plaintiffs: (1) were liable for damages caused to the Owners, (2) should have their corporate veils pierced, (3) committed fraud, (4) owed the County reasonable costs and attorneys' fees, and (5) engaged in unfair and deceptive trade practices.

On 27 June 2022, with the consent of all parties, the Owners were permitted to intervene in the case below because the trial court had determined the Owners' interests were "not adequately represented by the existing parties."

On 14 February 2023, following a bench trial, Judge Hoover entered a declaratory judgment finding Plaintiffs liable. Pursuant to N.C. Gen. Stat. § 1-259 (2025), the trial court reserved the determination of damages for a later hearing. The declaratory judgment stated Plaintiffs had "deliberately submitted drawings and plans to the County for approval, knowing that they intended to make a significant change in the submitted plans." The trial court pierced the corporate veil, concluding "Daedalus Realty, LLC and Jason Murphy are liable for damages resulting from their actions as set forth herein."

The County filed a motion for attorneys' fees and costs pursuant to the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") on 5 October 2023. N.C. Gen. Stat. § 75-1.1 (2025). On 22 March 2024, Plaintiffs moved for relief from the declaratory judgment. On 29 May 2024, the trial court denied Plaintiffs' motion for relief.

On 31 January 2025, the trial court entered an Order and Judgment on Damages, directing Plaintiffs to make substantial alterations to the properties, which are the subject of this litigation, awarding trebled damages to each of the ten Owners, and awarding costs and attorneys' fees to the County. Plaintiffs timely filed a notice of appeal on 3 March 2025.

On 20 June 2025, the trial court entered an order staying enforcement of the Damages Award pending this appeal and further ordered Plaintiffs to post a bond of $839,300.00.

## II.　Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. §§ 1-258 and 7A-27(b)(1) (2025).

## III.　Issues

Plaintiffs argue the County lacked (1) standing to file the declaratory judgment action; (2) the Owners lacked standing; and, (3) the trial court erred in granting the declaratory judgment in favor of the County and damages and attorney fees to the Owners.

## IV.　Standing

### A. Standard of Review

"Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction[,] and is a question of law which the Court reviews de novo." *Smith v. Forsyth Cty. Bd. of Adjust.*, 186 N.C. App. 651, 653, 652 S.E.2d 355, 357

(2007) (citation and internal quotation marks omitted).

"Zoning regulations are in derogation of common law rights and they cannot be construed to include or exclude by implication that which is not clearly their express terms. It has been held that well-founded doubts as to the meaning of obscure provisions of a Zoning Ordinance should be resolved in favor of the free use of property." *Yancey v. Heafner,* 268 N.C. 263, 266, 150 S.E.2d 440, 443 (1966) (citation omitted).

## B. The County's Standing

"Standing is a threshold matter and necessary prerequisite to the court's proper exercise of subject[-]matter jurisdiction." *Prevette v. Elsner*, 298 N.C. App. 720, 723, 917 S.E.2d 275, 280 (2025) (citation and internal quotations omitted). The question of standing may be raised at any time, including for the first time on appeal. *Id*. To establish standing, three elements must be satisfied:

> (1) injury in fact—an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 114, 574 S.E.2d 48, 52 (2002) (citation and internal quotation marks omitted), *disc. rev. denied*, 356 N.C. 675, 577 S.E.2d 628 (2003).

Plaintiffs argue "[n]o particular statute grants governmental entities in North Carolina the right to bring a civil suit against a private party for damages sustained exclusively by specific citizens."

In response, the County maintains its authority to enforce Building and Residential Codes pursuant to Chapter 160D of the Building Code confers upon it standing to assert counterclaims on behalf of private citizens. N.C. Gen. Stat. § 160D-1104(b); 1118 (2025). Furthermore, the County contends it possessed standing to challenge the Appellants' violation of the North Carolina Building Codes, in accordance with the standards set forth by our Supreme Court in *Committee to Elect Dan Forest v. Emps. Pol. Action Comm.*, 376 N.C. 558, 853 S.E.2d 698 (2021). In the case of *Dan Forest*, the Supreme Court stated:

> [O]ur courts have recognized the broad authority of the legislature to create causes of action, such as "citizen-suits" and "private attorney general actions," even where personal, factual injury did not previously exist, in order to vindicate the public interest. *In such cases, the relevant questions are only whether the plaintiff has shown a relevant statute confers a cause of action and whether the plaintiff satisfies the requirements to bring a claim under the statute.* There is no further constitutional requirement because the issue does not implicate the concerns that motivate our standing doctrine.

376 N.C. at 599, 853 S.E.2d at 727-28 (emphasis supplied). The decision on *Dan Forest* permits a party, who has not demonstrated "injury in fact", to possess standing if the party belongs to a class of individuals to whom a statute grants a cause of action. *Id.*

The County is responsible for enforcing the Building Code. N.C. Gen Stat. § 160D-1102(a)(2025). The County has the authority to bring "judicial actions against actual or threatened violations [of the Building Code] . . . and *any other actions that may be required in order [to] adequately . . . enforce those laws.*" N.C. Gen. Stat. § 160D-1104(b) (emphasis supplied). Further, N.C. Gen. Stat. § 160D-404(c) permits the County to "institute any appropriate action or proceedings to restrain, correct or abate the violation [of the Building Code]."

Plaintiffs acknowledge the County is authorized by statute and therefore possesses standing to enforce the Building Codes under the precedent in *Dan Forest*; however, Plaintiffs contest the assertion the County has standing to initiate legal action on behalf of the affected citizens.

The language of §§ 160D-1004(b) and 160D-404(c) clearly suggests the County possesses the authority to undertake actions beyond merely enforcing the Building Code. They explicitly state the County may pursue other suitable measures which "may be required in order to adequately enforce those laws" and to "correct or abate the violation." N.C. Gen. Stat. § 160D-1104(b); N.C. Gen. Stat. § 160D-404(c) (2025).

Nevertheless, Chapter 160 does not explicitly specify what these appropriate measures are, nor does it clarify whether such actions may be initiated on behalf of others. Under Dillon's Rule, "a municipal corporation [political subdivision of the State] possesses and can exercise the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to

the powers expressly granted; third, those essential to the declared objects and purposes of the corporation." *Lanvale Props., LLC v. Cnty. of Cabarrus,* 366 N.C. 142, 153, 731 S.E.2d 800, 809-10 (2012) (citations omitted).

North Carolina has also historically restricted local government entities or agencies from initiating claims on behalf of fully competent citizens unless explicitly authorized by statute. For instance, the Attorney General may commence private lawsuits on behalf of citizens only when explicitly granted by statute. *See State ex rel. Easley v. Rich Food Servs., Inc.*, 139 N.C. App. 691, 535 S.E.2d 84 (2000) (holding the North Carolina Attorney General is expressly authorized by statute to act as *parens patriae* in certain consumer protection matters). The statute in *Rich Food Servs.* explicitly stated the Attorney General has the authority to institute and originate proceedings before courts on behalf of citizens in all matters affecting the public interest. N.C. Gen. Stat. § 114-2(8)(a) (1999) (repealed by Session Laws 2024-57, s. 3D.1(h), effective December 11, 2024).

No such explicit language in N.C. Gen. Stat. § 160D authorizes the County or any local jurisdiction to initiate litigation to recover damages on behalf of private citizens. The County possessed the authority to pursue legal actions for compliance against the Plaintiffs; however, such actions do not encompass suits on behalf of private citizens seeking damages regarding private matters. *Id.* The County lacked standing to file claims against Plaintiffs to recover damages on behalf of the Owners

and, even more specifically, owners. who are not parties or in a certified class to this action. The damages award is vacated.

### C. Owner's Standing

Plaintiffs do not question the Owners' standing on the basis of their harm; rather, they argue because the Owners did not bring a pending claim, they are not entitled to a standing analysis. The Owners make two arguments to show standing: (1) their claims were litigated by consent; and, (2) as intervenors, they automatically have the right to benefit from any claim the adjudication of which benefits them.

### 1. *Litigation by Consent*

Rule 15(b) of our Rules of Civil Procedure permits pleadings to be amended by implied consent when evidence outside the pleadings is introduced without objection. *Roberts v. Memorial Park*, 281 N.C. 48, 57, 187 S.E.2d 721, 726 (1972).

No evidence of the "Owner's claims" outside the pleadings was entered into the record. Rather, the Owners were seemingly neutral on the issue until it appeared the County might win. The theory of litigation by consent is not applicable here. *See Tyson v. Ciba-Geigy Corp.*, 82 N.C. App. 626, 630, 347 S.E.2d 473, 476 (1986) "Where the evidence which supports an unpleaded issue also tends to support an issue properly raised by the pleadings, no objection to such evidence is necessary and the failure to object does not amount to implied consent to try the unpleaded issue." *Id.* (citation omitted).

### 2. *Automatic Right to Benefit*

The Owners also argue they "get the benefit of [the County's] claims just by intervening.") However, the Owners cite no authority to support this statement.

An intervening party typically pleads and asserts its own claims against a party it seeks to recover damages and fees from. *See City of Raleigh v. Edwards*, 234 N.C. 528, 530, 67 S.E.2d 669, 671 (1951) (holding an order allowing intervention "merely grants leave to the interveners to become parties to this proceeding so that they may assert [their own claims]"). Here, the Owners asserted no claims against Plaintiffs by filing pleadings or under the theory of litigation by consent. *Id.*

The Owners cite no authority in their brief to support the claim asserting mere intervention automatically entitles them to collect private damages and fees pursuant to or as a benefit of the County's declaratory judgment claim. The Owners did not bring or file any claims upon which relief may be granted. The Owners have filed a separate cause, which was been stayed pending the outcome of this action. That action is the proper action for the Owners to assert and prove' damages. In light of the precedents and our decision, the trial court's award of Owners' damages and attorney's fees is vacated.

## V.    Plaintiff's Declaratory Judgment Action

### A. Standard of Review

"The standard of review in declaratory judgment actions where the trial court decides questions of fact is whether the trial court's findings are supported by any competent evidence." *Cross v. Capital Transaction Grp., Inc.,* 191 N.C. App. 115, 117,

661 S.E.2d 778, 780 (2008) (citation and quotation marks omitted). "However, the trial court's conclusions of law are reviewable *de novo.*" *Browning v. Helff,* 136 N.C. App. 420, 423, 524 S.E.2d 95, 98 (2000) (citation omitted).

## B. Analysis

Plaintiffs argue they are entitled to a new trial on liability in their declaratory judgment action and assert the trial court should have looked to the 2012 and 2018 and not the 2024 Building Code changes to the definition of townhomes, which removed the "two-unit" townhouse to cure their noncompliance.

Our Supreme Court has held:

> When the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning.' . . . '[A] statute clear on its face must be enforced as written.' Consequently, [N.C. Gen. Stat. §] 153A-4 applies only when our zoning statutes are ambiguous, or when its application is necessary to give effect to 'any powers that are reasonably expedient to [a county's] exercise of the power.'

*Lanvale Properties,* 366 N.C. at 153-55, 731 S.E.2d at 809-10 (internal citations omitted).

The 2024 Building Code changed the definition of and now defines "townhouse" as "[a] single family dwelling unit constructed in a *group of two or more attached units* separated by property lines in which each unit extends from foundation to roof and with a yard or public way on not less than two sides." Plaintiffs' project was submitted and approved under the definitions contained in the 2012 and 2018

versions of the Building Code. We vacate and remand for consideration of Plaintiffs' claims under those applicable and controlling ordinances. *Id.*

## VI. Conclusion

The County has standing to seek a declaratory judgment over the meaning and applicability of its ordinances, but it does not possess the legal standing to file counterclaims against Plaintiffs for damages and attorney fees. The Owners failed to assert or prove any claims or damages of their own in this action and lack standing. The award of attorney's fees and damages award to Owners is vacated without prejudice to their pending action. This Court expresses no opinion and makes no decision on Owners' individual or collective claims for damages. The standing to assert the declaratory judgment action is affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.


Judges STROUD and HAMPSON concur.